Argued and submitted May 15, remanded in part; otherwise affirmed
November 29, 1995, petition for review denied March 6, 1996 (322 Or 644)

## In the Matter of the Marriage of

### Sharolyn Louise PUGH,
*Respondent,*

*and*

### Dale Edwin PUGH,
*Appellant.*

### (93-DR-0402; CA A84188)

906 P2d 829

Clayton C. Patrick argued the cause for appellant. With him on the brief was Patrick and Meadowbrook.

Nancy G. Neslund argued the cause for respondent. With her on the brief were Neslund & Neslund, Claudia E. Browne and Burrows, Hull & Browne.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Husband appeals from a dissolution judgment, arguing that the trial court awarded wife an inequitably large share of an annuity that resulted from settlement of a personal injury lawsuit during the marriage. We modify the award.

The parties were married for almost 20 years. They have no children. In the sixth year of their marriage, husband broke his back in an industrial accident and was rendered paraplegic. At the time, he was working as a welder/mechanic with a net income of $1,200 per month, and wife was working as a file clerk. Wife quit her job shortly after the accident and stayed home to care for husband. The parties initiated a personal injury action in which wife sought to recover for loss of consortium and husband sought recovery for medical expenses, loss of income, and pain and suffering. The action was settled two years later. Under the terms of the settlement, the parties received a cash payment plus an annuity that provides monthly payments for 20 years or until husband's death, whichever is later, in exchange for the parties' agreement "to dismiss with prejudice any and all claims arising out of [the] accident," including any eventual claim for husband's wrongful death. Each year, the monthly annuity payments increase by six percent. In the first year, the payments were $3,000 per month. At the time of dissolution, they had increased to $6,834 per month.

The settlement agreement specifies that 20 percent of the annuity is allocated to settle wife's claims and 80 percent of the annuity is allocated to settle husband's claims, but it does not differentiate among those claims.[1] Trial counsel in this dissolution proceeding contacted the attorneys who had handled the settlement agreement, but they were unsuccessful in their attempt to determine which portions of husband's 80 percent share of the annuity were attributable to his lost earnings, his medical expenses and his pain and suffering. Apparently, no such apportionment was made at the time of the settlement; the award is an undifferentiated

---

[1] The settlement agreement also refers to wife's "claims" in the plural, apparently in reference to both her loss of consortium claim and all future claims (*e.g.*, for wrongful death) that she has agreed to forgo.

mass, except for its 20/80 split between wife and husband. Nonetheless, the parties appear to have agreed at trial that no part of the annuity should be viewed as attributable to husband's claim for medical expenses, because all medical expenses related to his injury are paid by the insurance company outside the context of the settlement agreement.

The parties testified that husband, age 46, has continuing physical problems relating to his paraplegia and has not been able to work in the 14 years since the accident. After the accident, he was despondent and did not want to leave the house or talk on the telephone. Wife, age 45, handled negotiations with the attorneys who were involved in the personal injury action and its ultimate settlement. She, too, has not worked outside of the home since husband's accident. Wife suffers from migraine headaches that last between 10 and 15 days per month and have interfered with her ability to further her education.

The parties stipulated that wife should be awarded her 20 percent portion of the annuity, plus the six percent annual increases attributable to that 20 percent. Wife did not seek any portion of husband's social security and workers' compensation income, which at the time totaled $1,587 per month, nor any portion of a $24,000 mutual fund that is held in husband's name. The primary issue at trial was how to distribute husband's 80 percent share of the annuity. The parties agreed that husband should retain the portion of his 80 percent share that was attributable to the pain and suffering component of his personal injury action. They also agreed that they should share, to some extent, whatever portion of husband's 80 percent was attributable to his claim for lost wages, *i.e.*, that portion which had been intended to replace his stream of income. Because the parties were unable to find any evidence regarding which portion of the settlement annuity was intended to compensate husband for his lost wages, they agreed to proceed *as if* that portion were equal to the amount that husband would have been earning, had he continued to work at the job he held at the time of the accident and had he received six percent annual increases. On that basis, they arrived at a fictional monthly wage of $3,442, which they designated as the "income" portion of husband's 80 percent share of the monthly annuity payment.

Because the annuity is tax free, wife requested that one-half of the fictional "lost wages" or "stream of income" portion of husband's 80 percent ($1,721/month) be distributed to her as property, not as taxable spousal support. Husband requested that the award to wife be limited to one-half the amount of his fictional wages *minus* fictional taxes, and that it be further limited to a five-year period. Although husband offered to pay that amount in the form of spousal support, his arguments to the trial court were phrased in property division terms. He argued that the court must first decide whether wife had contributed to the acquisition of the annuity, and that it must then decide whether wife's 20 percent was sufficient compensation for her contribution. Under wife's approach, she would receive 30 percent of husband's 80 percent, tax free, for the life of the annuity. Under husband's approach, wife would receive 20 percent of his 80 percent for five years, in the form of spousal support.

In making its award, the trial court did not employ the parties' fiction regarding husband's "lost wages/stream of income." Instead, it ruled that the annuity was marital property and that husband had not rebutted the presumption of equal contribution. *See* ORS 107.105(1)(f). The court divided the annuity almost equally between the parties, with wife receiving an incrementally smaller portion each year. It awarded wife roughly 30 percent of husband's 80 percent share, at its 1993-94 level, but not the six percent annual increases attributable to that share. As a result, wife in 1993-94 received her 20 percent of the annuity ($1,139 per month) plus $1,721 per month (approximately 30 percent of husband's 80 percent share). Husband received $3,974 (approximately 70 percent of his 80 percent share), plus his social security and workers' compensation income. In 1994-95, wife again received her 20 percent, and the six percent increase attributable to it, plus $1,721 per month, while husband received $4,316 (approximately 70 percent of his 80 percent share, plus six percent on the entire 80 percent) from the annuity. In 1995-96, wife continues to receive her 20 percent, with a six percent increase, plus $1,721; husband receives $4,678. This pattern of payments — wife receiving her 20 percent of the annuity with annual six percent increases, plus a flat amount of $1,721 per month, and

husband receiving 70 percent of the 80 percent award allocated to him under the settlement agreement at its 1993-94 level, plus annual six percent increases on the entire 80 percent — continues for the duration of the annuity.

The trial court also found that, "although this was a long-term marriage, there is no income other than the ongoing property disbursement." On that basis, it ruled that this was not an appropriate case for awarding spousal support. The parties' remaining real and personal property was divided almost equally. Husband appeals, contending that the trial court erred both in ruling that he had not rebutted the presumption of equal contribution and in awarding wife almost 50 percent of the entire annuity (*i.e.*, her 20 percent plus 30 percent of his 80 percent).

■ We have consistently treated personal injury awards as a form of property. *See, e.g., Peterman and Peterman*, 94 Or App 190, 193, 764 P2d 962 (1988), *rev den* 307 Or 514 (1989); *Langan and Langan*, 89 Or App 320, 324, 748 P2d 1035, *rev den* 305 Or 433 (1988); *Bull and Bull*, 48 Or App 565, 568, 617 P2d 317 (1980); *Sellers and Sellers*, 39 Or App 647, 650-51, 593 P2d 1191 (1979); *Vetter and Vetter*, 16 Or App 634, 520 P2d 364 (1974). That has been the rule even when the award represented compensation for one spouse's pain and suffering, future medical expenses and lost wages, if the settlement award required the noninjured spouse to release all future claims that that spouse might otherwise have been entitled to bring as a result of the accident. *Cavilee and Cavilee*, 21 Or App 506, 512, 535 P2d 774 (1975).[2]

■■ Under ORS 107.501(1)(f), the court in a dissolution case has authority to distribute "the real or personal property, or both, of either or both of the parties[.]" Within that entire class of property, which includes property owned prior to marriage, is a *subclass* of property that the statute refers to as "marital assets." Marital assets, sometimes called marital property, describes all property that is acquired by either spouse during the marriage, regardless of whether it is held in

---

[2] We express no opinion as to whether that rule would apply if designated amounts or percentages of the award had been assigned to the specific claims of pain and suffering, lost wages and medical expenses (*e.g.*, 60 percent to pain and suffering, 20 percent to lost wages and 20 percent to medical expenses). In *Cavilee*, as here, the claim components were identified, but the award itself was undifferentiated.

only one spouse's name. *Stice and Stice*, 308 Or 316, 325, 328, 779 P2d 1020 (1989)(corporate stock purchased by wife through payroll deductions and held in her name alone was marital property because purchases were made while parties were married). Because the settlement annuity in this case was acquired during the parties' marriage, it is a marital asset.

Marital assets are subject to the rebuttable presumption that both spouses contributed equally to their acquisition. ORS 107.105(1)(f); *Stice*, 308 Or at 325. In order to rebut that presumption, a party must prove "by a preponderance of the evidence that it is more probable than not that the other spouse did *not* contribute equally to the acquisition of the property." *Id.* at 326 (emphasis in original). A spouse may rebut the presumption by showing, with the requisite quantum of evidence, that he or she acquired the property "uninfluenced directly or indirectly by the other spouse, *i.e.*, the other spouse has contributed neither economically nor otherwise to the acquisition of the property in issue." *Id.* at 325-26. In *Stice*, the presumption was not rebutted because, although the disputed stock in that case had been acquired and held by the wife alone, the parties' financial affairs were commingled, there was no agreement between them that the stock was the wife's separate property, her argument that the husband had wasted marital assets was not supported by a preponderance of the evidence, and the wife had been able to acquire the stock as a result of the husband's financial support, because both of their incomes were used to purchase marital assets, pay marital debts and support their standard of living. *Id.* at 328-29.

This case presents an even stronger basis for concluding that husband has not rebutted the presumption of wife's equal contribution to the acquisition of the annuity. The settlement award was acquired by the efforts of both parties; the annuity named the parties as joint beneficiaries; there is no evidence that the monthly payments took the form of separate checks to each party for the proportionate amount of their allocations; their income was apparently combined and available to both parties; the monthly payments were used to purchase marital assets and to support the parties' standard of living for 14 years; there was no evidence of an

understanding between the parties that 80 percent of the annuity was husband's separate property; and, finally, the settlement annuity did not segregate component amounts for pain and suffering unique to husband. *See* n 2 above.

Nonetheless, husband contends on appeal that, under *Peterman*, he has rebutted the presumption of wife's equal contribution to the acquisition of his 80 percent share of the annuity. In *Peterman*, the wife was injured when she fell from the second story of a building while working for the husband's construction business. 94 Or App at 192. She initiated a personal injury action against the owner of the building and others, seeking recovery for her pain and suffering, medical expenses and loss of earning capacity. The husband did not take part in the lawsuit, which settled and resulted in the wife receiving a series of fixed sum payments. Because the husband had refused to sign the first check and the necessary release documents, the payments were made to the wife in her name alone. When the parties' marriage ended, the husband was awarded a portion of the annuity. *Id.* at 193. On appeal, we held that wife had overcome the statutory presumption that the husband had contributed equally to the acquisition of her settlement award. In a cursory explanation of how the wife had accomplished that feat, we wrote:

> "Husband had no part in the action or the settlement and claimed no damages for loss of consortium. The future payments would compensate wife for pain and suffering continuing after the marriage ended, for future loss of her ability to earn and for future medical expenses. They should not have been treated as property to be divided, but as separate property of wife." *Id.*[3]

*Peterman* does not assist husband, and he conceded as much in his closing arguments below.[4] Here, the

---

[3] However, we noted that payments the wife had received during the marriage had been *converted* into marital property by virtue of the fact that she had used those payments for the benefit of the family. 94 Or App at 193.

[4] After the parties discussed with the trial court the impact of the *Peterman* case, husband's attorney said,

> "I have to agree with [wife's attorney]. Mr. Pugh's testimony in this case simply indicates that this was a, as far as the post trauma period goes, and the, and the time of the lawsuit, they were both working on this together. *It wasn't like the case here in Mr. Peterman and Mrs. Peterman's life. So we don't have an analogy*

noninjured spouse quit her job, cared for husband 24 hours a day, joined in the personal injury action, brought her own claim, was actively involved in the negotiations which after two years led to the settlement of both her and husband's claims, agreed to forgo future litigation related to husband's injury or eventual death, and has continued to provide care to husband for the 14 years since the accident. Husband testified that he had no interest in talking on the phone during the time that settlement negotiations were underway and that wife has consistently provided emotional support for him throughout his ordeal. Those facts support, rather than rebut, the presumption of wife's equal contribution to the acquisition of the annuity in this case.

Although the annuity has undifferentiated components, husband also argues that his 80 percent share was intended to compensate him for pain and suffering that will continue after his marriage ends and that the terms of the settlement agreement itself require the conclusion that wife contributed to the acquisition of only her 20 percent award. There is a facial appeal to the argument that the 20/80 allocation in the settlement award rebuts the presumption that the 20 percent award winner has equally contributed to the acquisition of the 80 percent award, and that unequal allocations therefore require the conclusion that each portion is the separate property of its identified recipient. However, we discern no principled distinction between this scenario and that of the wife in *Stice* who individually acquired property during the marriage and held it in her name alone. Regardless of who was responsible for its acquisition, the property remains a marital asset; as such, it is subject to the presumption of equal contribution. *Stice*, 308 Or at 325. Here, husband has not proven by a preponderance of the evidence that the annuity was acquired "uninfluenced directly or indirectly by [wife]." *Id*. Accordingly, he has not rebutted the presumption of wife's equal contribution.[5]

---

to that. In fact, it's, the principals seem to be following just the opposite way of the *Peterman's*. Mrs. Pugh worked as hand secretary, and phone answerer, and guider to the lawyers in the settlement process, evidently, and that seems to be agreed by both parties." (Emphasis supplied.)

[5] Even if the presumption had been rebutted, and the allocations were deemed to be the separate property of the two parties, the entire annuity would remain

■ As a general rule, when property is acquired during a long-term marriage, the origin of each item of property becomes less significant; the goal of the court should be to assist the parties in separating "on as equal a basis as possible." *Id.* at 327. Special circumstances, including the effects of the parties' ages, health, relative salaries, debts or custodial responsibilities, may justify a departure from that general rule and may "dictate unequal division of the parties' property." *Id.* at 328.

■ We agree with husband that such circumstances are present here. The serious and permanent nature of husband's injury and the settlement agreement's designation of 80 percent of the annuity as compensation for that injury are two factors that substantiate his equitable entitlement to a disproportionately greater share of the annuity. Although both parties have suffered as a result of the injury to husband, it is undisputed that his income-earning potential has been compromised the most, that he will be the party in greatest need of additional support in the future and that his paraplegia will have a more substantial effect on his ability to lead an independent post-dissolution life than will wife's headaches. On *de novo* review of the entire record,[6] we conclude that the trial court's 30/70 division of husband's 80 percent annuity was not "just and proper in all the circumstances." ORS 107.105(1)(f). We modify the judgment to award wife 10 percent of husband's 80 percent portion of the annuity. However, because neither party will be immune from future increases in the cost of living, we award wife the six percent increases attributable to that share.

■ Finally, we hold that the trial court did not err in declining to award wife spousal support in the manner urged by husband below. "In determining the proper amount of support and the proper division of property, * * * [courts]

---

subject to equitable distribution by the court. ORS 107.105(1)(f); *Stice*, 308 Or at 326.

[6] Although the parties' stipulations in this case attempted to remove from the trial court's consideration both wife's 20 percent annuity and husband's disability income, thereby leaving in the distribution equation only the parties' ranch, their personal property and husband's 80 percent annuity, on *de novo* review we consider all of the parties' assets and income, in order to construct a distribution plan that is just and equitable.

may consider evidence of the tax consequences on the parties[.]" ORS 107.105(2). When the parties' primary source of income is a tax free annuity, nothing is gained by "distributing" that asset in the form of taxable spousal support. Transforming a tax free asset into taxable income, and thereby reducing the funds that are available to both parties, would be especially detrimental where, as here, neither party has particularly good prospects for highly remunerative employment and neither has articulated a plan that will increase their income in the future.

Remanded for entry of modified judgment that awards wife 10 percent of husband's 80 percent of the annuity, including the six percent annual increases attributable to that 10 percent share; otherwise affirmed. No costs to either party.