Argued and submitted May 18, 1995, remanded with instructions on appeal and on cross-appeal February 7, petition for review denied August 20, 1996 (324 Or 78)

## In the Matter of the Marriage of

Joyce Colleen COLLING,
*Respondent - Cross-Appellant,*
*and*

Charles Wesley COLLING,
*Appellant - Cross-Respondent.*

(C93-0270DR; CA A84131)

910 P2d 1165

Jacqueline L. Koch argued the cause for appellant - cross-respondent. With her on the brief was Gevurtz, Menashe, Larson & Yates, P.C. With her on the reply brief was Findling & Johnson.

Ann Morgenstern argued the cause and filed the brief for respondent - cross-appellant.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Husband appeals from a dissolution judgment, arguing that the trial court erred by awarding wife an inequitable share of the marital property and in failing to award him spousal support. Wife cross-appeals, also contending that the court erred in its distribution of the marital property. Wife argues that the trial court erred by treating her retirement account as a property asset, because she had not yet retired at the time of trial, while at the same time not considering husband's retirement account to be a property asset because he had retired. On *de novo* review, we modify the judgment.

The parties were married for 33 years. Wife was 54 years old and husband was 58 years old at the time of trial. Wife has a PhD in nursing and is an expert in the field of gerontology. She has worked throughout the marriage, although at times, due to the demands of raising four children, it was necessary for her to delay her education and reduce her work hours. At the time of trial, she was employed at the Oregon Health Sciences University (OHSU) as a professor earning a net monthly income of $3,354. Wife planned to take a sabbatical during 1994 and then return to OHSU. Although she did not have definite plans, she testified that she would like to retire from OHSU at age 57 or 58 and develop a practice in incontinence management. The assets received by wife in the property division did not provide any net income at the time of trial.

Husband was a school teacher until his retirement in 1989. His monthly retirement income from PERS is $2,343, plus a stipend of $388 from the Lake Oswego School District. The stipend will end when he reaches age 62. Throughout the marriage, husband has managed and done maintenance work on the parties' rental properties. According to the testimony of an accountant called as a witness by husband, the rental properties awarded to husband in the property division will provide some net annual income to husband. It is unclear from the record how much that will be, although it appears likely that he will receive at least $1,000 per month from the property. Although husband retired from the school district with a physical disability, there is no indication in the record that husband is unable to work.

Husband and wife owned their personal residence and a beach home, which they owned jointly with husband's mother. In addition, they had acquired numerous rental properties. The largest property was a 20-unit apartment complex, known as Kane Meadows. They also had a number of smaller properties, including the Walnut Street properties (two houses), the Durham Road properties (two houses and an adjacent lot), the Rockaway Beach properties (three units and two vacant lots) and the Newberg properties (three houses and a duplex). They also had a part interest in a duplex and lot. Although wife assisted husband when they first began their acquisition of rental properties, since about 1980, husband has done the majority of the work relating to these properties.

The trial court's property award gave wife assets valued at $818,093, and husband received assets valued at $780,437. In dividing the marital property, the trial court valued wife's PERS account at $506,421 but gave no value to husband's PERS account. As the trial court explained, it believed that it was obligated to exclude husband's account from the property division, because he had retired and was receiving monthly income from his account. The court explained:

> "Wife is awarded as her sole property those assets set forth in Schedule A of this opinion. Husband is awarded as his sole property those assets set forth in Schedule B of this opinion. In fashioning the division of assets the court has attempted to do what is just and proper pursuant to ORS 107.105(1)(f). That having been said the court remains troubled with being required to treat wife's PERS account as a hard asset, while treating husband's PERS retirement benefit as merely an income stream. The result is husband receiving the bulk of jointly acquired real property simply because he chose to retire early thus removing his PERS account from the 'marital property' designation."

It is apparent that the trial court's inclusion of wife's PERS account at a value of $506,421, and complete exclusion of husband's account from the property division, had a substantial impact on the distribution of the marital property. Because many of the issues raised by the parties in this appeal concern the property award, it is essential at the

outset to resolve whether the court's treatment of the parties' retirement accounts was proper.

■ We conclude that the trial court erred in its treatment of the parties' retirement accounts. There is no question that wife's PERS account must be treated as property in the dissolution. *Richardson and Richardson*, 307 Or 370, 377, 769 P2d 179 (1989); *see also Pugh and Pugh*, 138 Or App 63, 906 P2d 829 (1995); *Massee and Massee*, 138 Or App 589, 911 P2d 320 (1996). The pertinent statute, ORS 107.105-(1)(f), provides that:

> "A retirement plan or pension or an interest therein shall be considered as property."

The more difficult question presented by this case is how to treat husband's PERS account. Creveling, a pension actuary, called as a witness by wife, testified that the present actuarial value of wife's PERS account was $506,421, and that the present actuarial value of husband's account, including the stipend from the school district, was $422,299. There is no contradictory evidence in the record on the value of the parties' pensions. However, as discussed above, because husband retired in 1989, approximately four years before the trial, the trial court valued his retirement account at zero in the property division.

The trial court recognized that its treatment of what were substantially similar assets of the parties in such a different way resulted in an inequitable division of the property. However, as apparent from the court's comments, the court concluded that it was obligated, under its view of the existing state of the law, to exclude husband's PERS account from the property division because he had retired and was receiving monthly income from the account. After reviewing the pertinent case law, however, we do not think that that conclusion is compelled by prior decisions and that, in fact, a different result is required.

■ It is well established that that portion of a pension earned during the marriage is a marital asset that is subject to the presumption of equal contribution.[1] *Massee*, 138 Or

---

[1] Neither party argues here that the presumption of equal contribution has been rebutted.

App at 595. In many, if not most, circumstances where the party who earned the pension has retired, we have satisfied the former spouse's entitlement to a portion of the pension by awarding that spouse an equitable portion of the monthly benefits. Interestingly, however, we have not directly addressed the question of whether, in such circumstances, it is impermissible to attribute any value to the retirement account as a property asset.

■ Our responsibility under the statute is to divide the marital property in a manner that is just and equitable under all of the circumstances. ORS 107.105(1)(f). *Stice and Stice,* 308 Or 316, 326, 779 P2d 1020 (1989). As we observed in *Hester and Hester,* 122 Or App 147, 150, 856 P2d 1048 (1993),

> "the treatment of retirement plans in dissolution proceedings is not subject to the application of hard and fast rules that apply in all cases. That is because the parties' circumstances and the varieties of retirement plans 'are almost infinite.' " *Id.* at 150, quoting *Rogers and Rogers,* 45 Or App 885, 892, 609 P2d 877, *mod* 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980).

The parties' circumstances here are somewhat unusual and, as noted above, the result here is not directly governed by any of our previous decisions. We are convinced, however, as was the trial court, that the present division of property is not just and equitable. To allow the fortuity of the timing of the parties' retirement to have such a substantial and inequitable impact on the property distribution would be inconsistent with our responsibility under ORS 107.105(1)(f) to divide the marital property in a manner that is "just and proper under all of the circumstances."

One possible approach to distributing the parties' retirement benefits here would be to award wife a proportionate share of husband's monthly retirement income and, similarly, to award husband a designated amount of wife's retirement, payable when she retires. *See Kernan and Kernan,* 97 Or App 362, 776 P2d 41 (1989). That is not a very satisfactory alternative here, however, because it would result in a substantial reduction in husband's monthly income at a time when that income is necessary to his being self-supporting.

■■ We conclude that a permissible alternate approach here is to value both parties' retirement accounts as property assets. We see no reason why, as a matter of law, the fact that a retirement account is in payout status must *automatically* result in the account being valued at zero in the property division, regardless of the parties' circumstances. Accordingly, we hold that in circumstances where it is necessary to achieve an equitable result, it is permissible for the court to attribute value to a retirement account, even though the person has retired.[2] We believe that this case involves circumstances where such an approach is appropriate. In so holding, we recognize that the valuation of a retirement account in such circumstances must take into account the fact that it is in payout status.

■ We turn to the division of property in view of our conclusion that the retirement accounts should both be valued as property assets. The uncontradicted testimony at trial was that the present value of husband's retirement account is $422,299. The evidence was that the value of wife's account is $506,421, if she retired at age 55, and $531,982 if she retired at 58. The trial court used the value of the account if wife were to retire at age 55. Husband argues that that was error, because wife testified that she did not plan to retire until age 58. We agree. Wife testified that it was most likely she would retire at age 58. Accordingly, we will value wife's account as if she would retire at age 58. That amount is $531,982. *See Mahaffey and Mahaffey,* 96 Or App 617, 621, 773 P2d 806 (1989).

■ In her cross-appeal, wife argues that the trial court erred in its valuation of her PERS account because it failed to reduce the account value for a 23 percent penalty that she would incur for retiring early at age 55. However, as discussed above, wife did not intend to retire at age 55. Therefore, this penalty would not be incurred, and the trial court was correct in not reducing the account value for that reason.

---

[2] Although other types of assets, such as annuities, admittedly are different from a retirement account, analogously, we have treated such assets as marital assets even though monthly income is received from the assets. *See Pugh and Pugh,* 138 Or App 63, 906 P2d 829 (1995).

■    Wife also argues that the value of her retirement account must be discounted by 34.8 percent, which represents the income taxes that she would be obligated to pay upon receipt of her retirement income. Such a discount is appropriate when there is evidence in the record specifically establishing the tax rate. *Cookson and Cookson*, 134 Or App 357, 895 P2d 345 (1995); *Alexander and Alexander*, 87 Or App 259, 742 P2d 63 (1987). Because there was such evidence here, we will discount the value of wife's account to $346,852. The evidence as to the rate applicable to husband's income is not as clear. The evidence establishes the approximate amount of husband's income, and an exhibit submitted by wife's expert witness shows the appropriate tax rate for that income. However, there is no testimony specifically directed to the rate at which husband's income was being taxed; in particular, there is no evidence concerning other factors that might affect the tax rate applicable to husband's income. We will assume that the rate shown in the exhibit is appropriate and, accordingly, discount husband's account by that amount. Accordingly, husband's account should be discounted by 34.8 percent to $275,339. However, because we have significantly changed the treatment of husband's retirement asset, it may be appropriate for the trial court on remand to consider additional evidence on this issue if either of the parties so requests. If the trial court determines that a different discount should be applied to husband's retirement account, it may be appropriate for the trial court to make further adjustments in the property distribution.

■ ■    After the adjustments discussed above, husband's share of the property, as distributed by the trial court, is 1,055,776, and wife's is $658,524.[3] Marital property is to be divided as equally as possible, in the absence of special circumstances that would justify an unequal division of property. *Pugh*, 138 Or App at 63. We find no special circumstances here that would justify an unequal division. Accordingly, we modify the property distribution to award wife the house on S.W. 103rd, which had an equity value at the time of trial of $64,961, as well as lots 6 and 7 on N.W. 19th Street in Rockaway, which had an equity value of

---

[3] The parties do not dispute the trial court's valuation of any of the other marital property.

$65,500 at the time of trial and the Lake Oswego property at 830 4th Street that had an equity value of $52,880 at the time of trial. In addition, we award wife an equalizing judgment of $15,285, payable by husband within 180 days of the effective date of appellate judgment, together with interest at nine percent, running from the effective date of appellate judgment.

Husband argues that if the court treats his retirement as a property asset, it would be unfair to consider his retirement income in determining the need for spousal support, which he argues the trial court should have awarded him. We agree. Just as it is inappropriate to award spousal support in lieu of a party's share of a retirement asset, *Kernan*, 97 Or App at 365, it would not be proper to consider husband's receipt of retirement benefits, which we have treated as a property asset, in lieu of spousal support.

Until such time as wife retires, there is some disparity in the parties' income. Wife is presently earning approximately $3,394 from her employment. However, that income will, of course, end at the time that she retires. She will also receive some minimal income from the property that she has been awarded. Because we have considered husband's retirement account as a property asset, we will not attribute it to him as income. As discussed above, husband will receive some income from the property that he has been awarded. In addition, although retired, husband does have some earning capacity. There is no indication in the record that he is unable to work.

In setting the amount of spousal support, we are to award "such amount of money for such period of time as it may be just and equitable for the other party to contribute." ORS 107.105(1)(d). Under the statute, we are to consider such factors as the length of the marriage, the age and health of the parties, the parties' earning capacities, including their work experience and employment skills, as well as the need for education and training to allow the parties to pursue career objectives and become self-supporting at a standard of living " 'not overly disproportionate' to that enjoyed during the marriage." *Richardson*, 307 Or at 383. However, the purpose of spousal support is not to eliminate all disparities in the parties' income or to allow one party to

look indefinitely to the other for support, if self-support at a reasonable level is possible. *Ley and Ley*, 133 Or App 138, 141, 890 P2d 440 (1995).

■ Both of the parties here have significant education and work experience and significant earning capacities. Wife presently has a higher earning capacity and, at the time of trial, her monthly income was higher than husband's. That difference in income will continue until she retires, presumably at age 58. Considering all of the circumstances here, although husband has less income now, it is unnecessary for him to look indefinitely to wife for support. He is fully capable of supporting himself at a reasonable level, even if that means obtaining part or full-time employment. We believe that the only award of support that is appropriate here is an award of $500 per month for a period of two years to allow husband to make the transition to becoming fully self-supporting and achieve a standard of living not disproportionate to that enjoyed by the parties during the parties' marriage.

■ In her cross-appeal, wife also argues that the trial court erred in including life insurance policies with a cash value of approximately $10,000 as property that she received in the property distribution. She contends that these insurance policies were taken out for the benefit of the children and, therefore, that their value should not be "charged to wife's side of the ledger." However, as husband correctly points out, the children are not parties to the dissolution and, accordingly, the court lacked authority to award them to the children. *Crowley and Crowley*, 82 Or App 27, 30-31, 727 P2d 141 (1986). We do not believe that it is inequitable to award them to wife.

Wife also argues that we should remand the case for purposes of entering a supplemental judgment relating to the proper disbursement of rental income from the parties' property. The parties are entitled to the income from the property that each is awarded. On remand, the court may consider this question. In this regard, we would note that because husband has managed the property that he was awarded by the trial court, it would be equitable, under these circumstances, to award him the income produced by all of the property that he was initially awarded between the date

of the trial court judgment and the date of the appellate judgment.

██ Wife also argues that the trial court erred in refusing to award her attorney fees. We conclude that the trial court did not abuse its discretion in denying the fees. *Richardson*, 307 Or at 385; *Haguewood and Haguewood*, 292 Or 197, 638 P2d 1135 (1981).

On appeal and on cross-appeal, remanded with instructions to modify judgment to award Tigard property at 103rd Avenue, Rockaway, lots 6 and 7, and Lake Oswego property at 830 4th Street to wife; to award wife a judgment for $15,285, payable by husband within 180 days of the effective date of the appellate judgment, with judgment interest at nine percent; to reconsider the tax rate applicable to discount husband's retirement account, if requested by either party; and to award spousal support to husband of $500 per month for a period of two years, effective on the date of the trial court judgment. No costs to either party.