Argued and submitted May 6, 1996, remanded with instructions in part on appeal; otherwise affirmed on appeal and cross-appeal May 28, 1997

# In the Matter of the Marriage of

## Luan Rath FISHER,
*Respondent - Cross-Appellant,*

*and*

## Barry Tim FISHER,
*Appellant - Cross-Respondent.*

### (93C-37914; CA A89690)

939 P2d 149

Gregory C. Hansen argued the cause for appellant - cross-respondent. With him on the briefs was Loren P. Bell.

Sarah Moore Bostwick argued the cause and filed the brief for respondent - cross-appellant.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Husband appeals from a dissolution judgment, assigning error to the amount and duration of the award of spousal support and to the court's division of renewal commissions payable to husband by the insurance company for which he worked. On *de novo* review, we modify the judgment.

The parties were married for 24 years. Wife was 42 years old and husband was 48 years old at the time of trial. The parties have two children; one child, 14 years old, was living with wife; the other child was attending college. Wife has a high school education. During 12 years of the marriage, she worked as a homemaker. She also worked periodically at part-time jobs, including sales and bookkeeping. In addition, she provided some assistance to husband with his business, including office work and entertaining clients. At the time of trial, wife was not working, but was attending community college with the goal of obtaining a four-year degree in accounting. She testified that she believed that, after receiving a degree, she would have an initial earning capacity of $1,400 to $1,800 per month.

Husband is a regional sales manager with American Family Life Assurance Company (AFLAC). At the time of trial, he had been with the company for 19 years. Husband's monthly income consists of commissions from sales of new insurance policies and commissions from policies sold in previous years. These latter commissions were referred to as "renewal commissions." They may not be assigned to a third party. The renewal commissions make up about one-half of husband's monthly income. Although this amount is disputed, as we will discuss, the trial court found husband's income to be about $10,000 per month.

The trial court awarded custody of the parties' two children to wife, pursuant to a stipulation. It also ordered husband to pay $473 per month child support for each child. The support obligation for the oldest child ended in August 1996. The court awarded wife spousal support of $2,500 per month for four years and, thereafter, $1,500 per month indefinitely.

In the property division, the trial court valued husband's renewal commissions at $435,720. That value was based on expert testimony given by wife's witnesses. Wife's first witness, an independent insurance agent, testified regarding the "lapse rate," which is a statistical computation of the projected average amount of policies that will be renewed based on the number of times a policy has been renewed in the past. He then applied that average to husband's existing policies that were written during the marriage. Using an assumption that husband would live another 20 years,[1] he concluded that the present value of the renewals was $600,000. Wife then offered the testimony of a tax specialist, who discounted the $600,000 by 27.3 percent, which he testified was husband's average tax rate based on federal, state and self-employment taxes. That resulted in a value from the renewal commissions of $435,720. The trial court awarded wife one half that amount, $217,860, as an equalizing judgment, payable with interest running at nine percent per annum.

The court also awarded the proceeds of the parties' residence, which was to be sold, and which had about $80,000 equity, equally to both parties. The court gave husband the option of giving wife his one-half interest in the parties' residence and assuming all responsibility for marital debts of about $40,000, in exchange for reducing the equalizing judgment to $155,000. With respect to the payment of principal and interest on the equalizing judgment, the trial court ordered that for the first four years following entry of the judgment, the interest payment of $1,634 on the judgment ($1,162 per month if husband elects the trial court's option) would be "characterized as spousal support" and included in the monthly spousal support payment. Following that time, husband must pay to wife a payment of principal and interest of $2,606 per month ($1,854 if husband elects the option) until the judgment is paid in full.

Husband assigns error to the amount and duration of spousal support and to the trial court's treatment of his

---

[1] Husband's actuarial life expectancy is 27 years.

renewal commissions as property. Because the question concerning the proper characterization of the renewal commissions will affect our analysis of the award of spousal support, we address it first.

■      Husband contends that the renewal commissions should not have been treated as property, but should only have been considered as part of husband's monthly income. He asserts that:

> "The record contains credible and sufficient evidence that [h]usband's renewal commissions are not a traditional marital asset, but are part of and comprise over one-half of [h]usband's monthly income stream and therefore should be considered in respect to spousal support only, and should not be characterized as property, because to do so results in a double dip into [h]usband's income stream."

However, the fact that an asset produces monthly income does not necessarily lead to the conclusion that it may not be valued as a marital asset. *See Colling and Colling*, 139 Or App 16, 22, 910 P2d 1165, *rev den* 324 Or 78 (1996) (husband's monthly retirement income treated as property); *Pugh and Pugh*, 138 Or App 63, 906 P2d 829 (1995), *rev den* 322 Or 644 (1996) (personal injury award paid out monthly under an annuity treated as property). The characterization of an asset such as this as "income" or "property" for purposes of dissolution proceedings depends on the specific nature of the particular asset. In considering renewal commissions in particular, the contract between the agent and the employer is especially important. Under husband's contract here, he has a vested right to the renewal commissions. If he leaves his employment with AFLAC, he will continue to receive the monthly income that he is entitled to for the renewals unless he violates the noncompete clause. If he dies, his surviving spouse will receive 50 percent of the amount that husband is entitled to for the commissions. Husband's employer may not unilaterally terminate husband's right to these commissions unless he violates the contract. As discussed above, the fact that there is some uncertainty in the percentage of policies that actually will be renewed was considered in the valuation of this asset and, as demonstrated by that evidence, the value is adequately predictable and quantifiable.

Based on the above considerations, we conclude that the trial court properly treated the renewal commissions as a marital asset. On appeal, husband does not challenge the trial court's value given to the renewal commissions. Accordingly, assuming that husband does not elect the option of giving wife his interest in the proceeds of the sale of their residence, wife is entitled to an equalizing judgment of $217,860, payable at nine percent per annum.

■ As noted above, the trial court ordered that the monthly payments of principal on the equalizing judgment would not begin until the 49th month following the effective date of the judgment. However, the judgment also provides that the interest only payments shall begin immediately, but that such "payments on said judgment shall be characterized as spousal support for the first 48 months from the date of the judgment[.]" However, as we held in *Edwards and Edwards*, 141 Or App 11, 21, 917 P2d 504, *rev den* 324 Or 305 (1996), the court lacks authority to include an obligation in a spousal support award that is truly not spousal support. Accordingly, interest payments for the first 48 months may not be treated as spousal support. The judgment should be modified to treat the interest payments and spousal support as separate obligations. Neither party challenges the schedule for the payment of principal and interest and, consequently, that should not be modified.

Husband also assigns error to the trial court's award of spousal support of $2,500 for the first four years and $1,500 indefinitely. Husband raises a number of problems with the award. He contends that the trial court's finding that his income was $10,000 per month is incorrect, both because it does not accurately reflect his actual income and also because it improperly includes the monthly income that he receives from renewal commissions. He also argues, generally, that the circumstances here simply do not justify the amount and duration of spousal support awarded to wife.

■ At the outset, we conclude that under the circumstances here, husband is correct that it is inequitable to directly include the renewal commissions in his monthly

income for purposes of calculating spousal support. *See Colling*, 139 Or App at 24. Of course, in determining an appropriate amount of spousal support, we do consider the parties' overall economic circumstances, including the property division. *Pokorny and Pokorny*, 109 Or App 503, 506-07, 820 P2d 827 (1991); *Rehmer and Rehmer*, 85 Or App 440, 443, 737 P2d 133 (1987). Consequently, to that extent, it is appropriate to consider husband's entitlement to the renewal commissions.

Aside from the inclusion of the renewal commissions, the parties also dispute the amount of husband's income. The trial court found that husband's earning capacity, including the renewal commissions, was $10,000 per month. Wife's expert testified that husband's gross monthly income was $9,292 per month. Wife's expert based that amount on husband's income for the first 10 months of 1994 and the last two months of 1993. Husband's expert concluded that his monthly income was $7,526 per month. That figure was based on husband's income for the first 10 months of 1994 extrapolated to 12 months. All of the above figures include the renewal commissions.

Husband argues that his proposed figures most accurately reflect his monthly income. He points out that although his income was higher in previous years, his income has now gone down because of his transfer to Georgia from Oregon in January 1994. He asserts that the court must only consider his present income and may not engage in speculation as to his future earning capacity. However, as we explained in our decision in *Christensen and Christensen*, 123 Or App 412, 415, 859 P2d 1192 (1993):

> "Husband argues the trial court is limited to the parties' 'present circumstances' and may not lawfully find that husband's income is more than what he was actually earning at the time of trial. Husband is wrong. The trial court is not bound by the fortuity of what may be a temporary business downturn or a short-term reduction in pay. It may, instead, take into account the record of the parties' earnings, their work histories and other factors in determining their earning capacities for the purpose of awarding spousal support and child support."

*See DeNotta and DeNotta,* 147 Or App 149, 935 P2d 475 (1997).

■     Here, the evidence demonstrates that husband's earning capacity, including the renewal commissions, is about $9,300 per month. As husband acknowledges, the sales area that he was transferred to is roughly comparable to his area in Oregon. Based on his past earnings record, which shows that husband's income has continually increased as he has acquired more policies, it is reasonable to conclude that his earning capacity will remain reasonably consistent with his past earnings record. Subtracting the amount that husband receives from the renewal commissions, which the evidence shows was about one-half of his monthly income, husband's income for purposes of spousal support is approximately $4,650.

■■     The remaining question is the appropriate level of spousal support under these circumstances. As the trial court recognized, wife's need to obtain further education to enhance her earning capacity justifies a larger award of support for four years. After that time, there will still remain a substantial disparity in the parties' earning capacity. Although the purpose of support is not to completely eliminate disparities in the parties' income nonetheless, when one spouse has been absent from the job market for an extended period of time to perform the role of homemaker, an award of support may be appropriate to lessen the disparity in the parties' income, due, at least in part, to the one spouse's absence from the job market. *McDonough and McDonough,* 141 Or App 116, 917 P2d 36 (1996). In view of that factor, as well as the length of the parties' marriage and wife's contribution to husband's earning capacity, we conclude that an award of $1,700 for four years and then an indefinite award of $1,000 per month is appropriate. Because of our disposition in husband's appeal, we need not address wife's cross-appeal in which she argues that, if we determine that the renewal commissions are income rather than property, her spousal support award should be increased.

On appeal, remanded with instructions to enter a modified judgment awarding wife $1,700 per month for four years and $1,000 per month indefinitely, effective August 9,

1995, and deleting all references by the court characterizing the interest payments as spousal support; otherwise affirmed on appeal and cross-appeal. Costs, not including attorney fees, to husband on appeal and cross-appeal.