Argued and submitted May 20, 1996; resubmitted In Banc January 14, affirmed
February 19, petition for review allowed May 27, 1997 (325 Or 367)
See later issue Oregon Reports

## In the Matter of the Marriage of

## Jeffrey Harold GLITHERO,
*Appellant,*

*and*

## Cynthia Irene GLITHERO,
*Respondent.*

## (93-4535; CA A90270)

934 P2d 492

In Banc

James D. Huffman argued the cause for appellant. With him on the brief was Olsen, Huffman & Horn.

Matthew H. Kehoe and Brink, Moore, Peterson & Kehoe filed the brief for respondent.

RIGGS, J.

Landau, J., dissenting.

**RIGGS, J.**

Father appeals from the trial court's denial of his motion to reduce child support. We affirm.

At the time of the parties' marital dissolution trial in January 1995, father was earning $3,309 per month at Myers Container, where he had worked for 17 years. That income was based on a 40-hour work week plus mandatory overtime. On February 3, 1995, father was laid off work. He received unemployment income and worked sporadically until March 27, 1995, at which time he accepted a job with another company, CMSI, that paid $2,236 per month. He declined an offer to return to his old job at Myers.

At a hearing on his subsequent motion to reduce child support,[1] father produced evidence of his reduced income and testified that in his opinion, decreased support would not create a hardship for his children. He testified that he had chosen to keep the new job at CMSI even after being offered his job back at Myers, because:

> "I would be starting at the bottom and I can move up where[as] * * * at Myers Container, I was at the top and [had] nowhere to go. There's more chances for advancement at CMSI. There's more chances to learn * * * more about machinery, different types of machinery.
>
> "They offer educational—tuition reimbursement where[as] Myers Container didn't offer any of that."

When questioned by the court as to why he had taken a job that paid approximately $10,000 less per year, father explained that he hoped the new job would provide "a better opportunity" and that he was tired of working mandatory overtime that required him to be on the job between nine and 12 hours a day, six or seven days each week, "with no relief in sight." He also testified that being at work so much of the

---

[1] We note that the parties' briefs fail to state what father was originally ordered to pay, what he is actually paying and what he hopes to pay under a reduced support obligation award. From our review of the entire record, it appears that father was ordered to pay $584 per month as child support, but that he is actually paying either $455 or an average of $430 per month, depending on which party's testimony is believed. The parties do not discuss the import, if any, of this apparent discrepancy between amount ordered and amount paid.

time had "dramatically" affected his relationship with his children and that he would now have more time to spend with them. He denied that he had taken the new job in order to reduce his child support obligation.

The trial court made the following rulings from the bench:

"It appears to me, first, that there's no doubt that Mr. Glithero changed his occupation. It appears to me that he had an opportunity to go back to his old job, chose not to, and so I believe that *his change of occupation was voluntary. I also believe it was in good faith.*

"I don't believe that Mr. Glithero did it just to reduce his income. I think he did it because, as he told me, he was tired of working all that overtime. He saw that this job maybe has some greater potential, in his mind, and so I believe that it was in good faith.

"*So the question comes down to who should bear the burden of the fact that there is now less income available to be distributed?* Should the children through the child support, should they have a reduction or should Mr. Glithero have to bear the expense of the fact that he has made a decision, even though that decision was made in good faith?

"I think that that is the decision that basically drives the rest of this matter. It appears to me that the law is that *having found that there is a good faith change in his employment, now I have to determine whether or not there has been evidence offered here today that would show* that the decrease in support to the children—I'm stating that wrong—that the decrease [hardship] to the obligor, if he has to continue paying the same support amount because he will have less income, outweighs any hardship to the children.

"*I'm not able to find that.* It appears to me that—and it should come as no surprise to anybody in this courtroom, that there is no more money to be divided up between these parties for their needs and the childrens' needs than there was at the time of the divorce six months ago.

"\* \* \* \* \*

"Mrs. Glithero, now Silvas \* \* \* indicates that she has a difficult time making her payments [on regular bills]. In

fact, [she] has had a very difficult time in keeping her house payments current and is behind on certain of her bills at this time. So it appears to me that at this time I cannot make that finding and as such I'm going to have to deny Mr. Glithero's request for a reduction in child support at this time." (Emphasis supplied.)

Father's counsel then asked the court to "reconsider whether there is in fact evidence in the record from Mr. Glithero that there isn't a hardship for the children." The court denied that request, saying:

"I just want to make clear for the record that if I did improperly state it, what my intention was in effect to say was that the hardship on the obligor [father] has to be greater than the hardship on the children to allow a modification and *it's my finding that there was not sufficient evidence on that point for me to find that the hardship on the father outweighed the hardship on the children* if I were to allow a reduction in child support." (Emphasis supplied.)

As framed by the court's ruling and by the parties' briefs, the narrow issue on appeal is whether father carried his burden of proving that the hardship that he will suffer if the motion to decrease support is not allowed outweighs any hardship that the children will experience if support payments are reduced.

We begin by noting that the trial court applied the correct legal standard in the modification proceeding. The relevant statute, ORS 107.135(3)(b), provides in part:

"If the motion for modification is one made by the obligor to reduce or terminate support, and if the obligee opposes the motion, the court shall not find a change in circumstances sufficient for reconsideration of support provisions, if the motion is based upon a reduction of the obligor's financial status resulting from the obligor's taking voluntary retirement, partial voluntary retirement or any other voluntary reduction of income or self-imposed curtailment of earning capacity, if it is shown that such action of the obligor was not taken in good faith but was for the primary purpose of avoiding the support obligation."

In *Willis and Willis*, 314 Or 566, 840 P2d 697 (1992), the court applied that statute to an incarcerated father, found that the father's reduction in income was made in good faith,

and reaffirmed that courts must consider each motion for modification "on a case-by-case basis, to determine whether the obligor has shown a 'substantial change in economic circumstances,' ORS 107.135(2)(a), which is *sufficient for reconsideration of support provisions*,' " ORS 107.135(3)(b)." *Id.* at 571 (emphasis supplied).

■ Although the phrase "sufficient for reconsideration" is not defined in the text of the statute, the well-established case law in this area provides the following contextual meaning: A support obligation will not necessarily be reduced even if the obligor's reduction in income was in good faith; in each case, the court must also consider the relative economic circumstances of the children and the obligor. *Nelson and Nelson*, 225 Or 257, 357 P2d 536 (1960); *see also Hogue and Hogue*, 115 Or App 697, 700, 839 P2d 760 (1992), *mod* 118 Or App 89, 846 P2d 422 (1993) ("[E]ven when an obligor acts in good faith, child support will not necessarily be modified. We evaluate the 'particulars of his changed circumstances, considering all the relevant factors,' as well as [the child's] welfare.") (citation omitted); *Zorn and Zorn*, 112 Or App 222, 224-25, 828 P2d 481 (1992) (even assuming that father's voluntary reduction in income was in good faith, he provided no evidence concerning how a reduction would affect the child and therefore failed to show that the hardship to him outweighed the hardship to the child); *Gay and Gay*, 108 Or App 121, 125, 814 P2d 543 (1991) ("[b]ecause the welfare of the child is the paramount consideration," voluntary reduction in obligor's income may justify reduction in child support if the change is made in good faith and the hardship to obligor, if decrease is not allowed, outweighs hardship to children that the reduction would cause); *Jones and Jones*, 106 Or App 264, 268, 806 P2d 1170 (1991) (Even where father's reduction in income was in good faith, "we examine the particulars of his changed circumstances, considering all the relevant factors, to determine whether a modification is warranted. We consider the children's economic circumstances and father's as well. Additionally, we must consider the position of mother, who might be faced with the challenge of making ends meet * * *.") (citation omitted).

Father, on appeal, asserts that the evidence *was* sufficient to show that his hardship will outweigh the children's.

Below, he sought to show that, as a result of funds that wife receives from her live-in boyfriend, wife's income is considerably greater than she stated on her uniform support affidavit; he also sought to show that her expenses are lower than she claims. Although there was some testimony to support those allegations, there was also testimony that, in order to make the mortgage payment, wife has been unable to pay her telephone and electric bills. Wife sought to show that husband's discretionary expenditures include trips to Utah, substantial long distance phone charges and $70 per month on cigarettes.

Having reviewed the parties' vitriolic testimony and the voluminous trial court record, it appears that father's strongest argument is that at trial, he testified that in his opinion, the children would not suffer and that testimony was not rebutted. Wife on appeal makes the unhelpful argument that, simply because "the family [came] to rely upon" the income that father obtained by working overtime, "it would be a gross hardship on the children to allow petitioner to reduce his child support obligation by virtue of this voluntary change of jobs."

■ Neither side's argument is persuasive and neither presents a clear *factual* basis for reaching a conclusion on the question of relative hardship. All that can be said in the final analysis is that, given his discretionary expenditures, father did not show that the continued payment of his current child support obligation *will* cause him to suffer any actual hardship, and there was evidence that the children *might* suffer from a reduction in support. Therefore, we affirm the trial court's denial of father's motion. *Zorn and Zorn*, above.

Father's other assignments of error, which relate to wife's award of attorney fees and a modification of his support obligation to reflect his brief period of unemployment, are without merit and need not be discussed.

We now turn to the arguments of the dissent. First, the dissent makes much of the fact that ORS 107.135 does not explicitly state that courts must consider the relative hardships of the parties, when ruling on a motion to modify child support. The dissent erroneously takes that to mean that courts *cannot* consider relative hardships. It is well

established that the text of a statute must be viewed in the light of judicial interpretations, *Alto v. State Fire Marshal*, 319 Or 382, 392, 876 P2d 774 (1994) (when interpreting a statute, an analysis of "text and context" *includes* "prior interpretation[s] of a statute"); *Kilminster v. Day Management Corp.*, 323 Or 618, 629-30, 919 P2d 474 (1996) (stating principle); *Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 527, 888 P2d 544 (1995) (Graber, J., dissenting) ("When reading the text of a statute, certain principles apply, including the principle that the text means what this court's prior interpretation thereof states."); *Davis v. O'Brien*, 320 Or 729, 741, 891 P2d 1307 (1995) ("As part of the text and context, the court includes consideration of its own prior interpretations of the statute."), and the cases in this area—*Nelson, Hogue, Zorn, Gay* and *Jones*—clearly *have* included the weighing of hardships in child support modifications. Because these are suits in equity and the interests of the children are of paramount importance, it is appropriate that the court take into consideration the effect that a reduction in support will have on the children.

The dissent eschews this application of equitable principles, apparently based on the fact that in a footnote in *Willis*, the Supreme Court said that we should not have employed the doctrine of "unclean hands" when *Willis* was before this court. 314 Or at 569 n 1. The dissent understands that to be a Supreme Court pronouncement that courts no longer have the authority to apply *any* equitable considerations in child support modification proceedings. As a consequence, the dissent ignores the fact that our novel approach in *Willis*, which was reversed by the Supreme Court, had no precedential support; indeed, our holding in that case required that we *overrule* one of our earlier cases. *See Willis and Willis*, 109 Or App 584, 586, 820 P2d 858 (1991). In contrast to the unconventional approach that we employed in *Willis*, since 1960 *Nelson* and its progeny have established, applied and reiterated the rule that the economic welfare of children is a relevant consideration in deciding whether to modify a child support award. The Supreme Court's footnoted comment in *Willis* simply informed us that our unprecedented use of the "unclean hands" doctrine in a support modification proceeding was *not* a viable basis for deciding

that the incarcerated father's reduction in income had been made in bad faith. That makes sense, because a supporting parent's criminal wrongdoing may not have been for the purpose of reducing child support and does not establish that the children will be economically harmed thereby.[2]

Moreover, the footnote on which the dissent relies cannot properly be understood without reference to its placement in the Supreme Court's *Willis* opinion. The court stated, in the text of that opinion, that ORS 107.135(3)(c) "lists factors to consider in deciding the issue of 'good faith.'" 314 Or at 569. It then inserted its footnoted comment that the equitable doctrine of unclean hands, on which this court had relied, "does not bar a party from seeking a modification of the child support provisions of a dissolution judgment[.]" *Id.* at 569 n 1. In context, then, that footnote simply tells us that equitable considerations are not determinative of whether the payor's reduction in income *was made in good faith.* But good faith is not at issue in the present case; it is clear that father's reduction *was* in good faith.

Finally, it bears noting that the dissent's approach, if adopted, would have the effect of transforming a discretionary statute into one that is mandatory. By its very terms, ORS 107.135 does not require a court to recalculate an award of support if a party shows that it has made a good faith reduction in income. The statute simply provides examples of what is "sufficient" for a court to reconsider a support order. Rather than stating that in the presence of certain facts a court *must* reconsider support, it states that certain facts are *enough* to justify reconsideration. The dissent also forgets that the act of reconsideration does not require a wholesale adoption of the moving party's position. A court may reconsider its original award and conclude that it remains correct.

Affirmed.

**LANDAU, J.,** dissenting.

ORS 107.135 provides that a "substantial change in economic circumstances," not occasioned by a bad faith

---

[2] In *Willis*, there was no need to weigh the relative hardships that would be created by reducing the incarcerated father's support obligation because the father was unable to produce *any* income.

change in employment, is sufficient to trigger a modification of a child support award. In this case, there is no dispute that there has been a "substantial change in economic circumstances." In addition, there is no dispute that the substantial change in circumstances was not occasioned by a bad faith change in father's employment. The trial court nevertheless held, and the majority agrees, that father is not entitled to seek modification of the child support award, because any change in the award might work a hardship on the children. The majority avoids the clear command of the statute by glossing it with the holding of one Supreme Court case, *Nelson and Nelson,* 225 Or 257, 357 P2d 536 (1960), which was decided before ORS 107.135 was enacted, and by ignoring the contrary holding of a more recent Supreme Court case, *Willis and Willis,* 314 Or 566, 840 P2d 697 (1992), that construed and applied the statute.

Respectfully, I suggest that the majority is wrong. Husband has shown all that the statute requires to be entitled to seek modification of the child support award. Nothing in ORS 107.135 or any other statute requires him to establish *as a prerequisite* to modification that a change in support will not work a hardship on mother or the children. The Supreme Court, in fact, expressly held in *Willis* that it is error to venture beyond considerations enumerated in the statute when determining whether to modify an award of support. The child support statutes expressly provide that such considerations may be taken into account in determining the extent to which the award is to be modified, not as an excuse to avoid the modification process entirely at the outset.

The role of the courts in determining whether and to what extent to modify an award of child support is a matter determined by statute. *See, e.g., Burnett et al v. Hatch,* 200 Or 291, 298, 266 P2d 414 (1954) (in domestic relations cases, courts have only that authority granted by statute); *Edwards and Edwards,* 124 Or App 646, 649, 863 P2d 513 (1993), *adhered to as modified* 127 Or App 489, 873 P2d 401 (1994) (same). In construing those statutes, we attempt to ascertain the intentions of the legislature, looking first, and foremost, to the text of the statutes in their context. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). The context includes the common-law and statutory framework in which the law was enacted. *Goodyear Tire &*

*Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 416-17, 908 P2d 300 (1995), *recons allowed* (July 23, 1996).

I begin with the law that existed before the adoption of the current statutes. Before the overhaul of the domestic relations statutes in 1971, courts exercised considerable discretion in setting child support awards and in later modifying those awards. ORS 107.130 (1959) provided that the courts have the power "to set aside, alter or modify" portions of a divorce decree providing for the care and custody of minor children. It was in that statutory context that the Supreme Court decided *Nelson*. In that case, the court held that a paying spouse's change in employment may be a basis for modifying a child support award, provided that change was made in good faith—that is, the change was not made merely to worsen the spouse's financial condition to justify a reduction in the support obligation—and provided also that the change did not work an undue hardship on the children. *Id.* at 264.

In 1971, the legislature substantially revised the domestic relations statutes. It created, as part of those revisions, what is now ORS 107.135. The text of that section, however, remained as before: It provided, without further qualification, that the court may "[s]et aside, alter or modify" child support awards. ORS 107.135(1)(a) (1971).

In 1983, the legislature amended ORS 107.135 to add a new section that constrains the court's authority to modify child support. The amended statute permitted courts to modify such awards upon "changes in circumstance," which the legislature defined to include "a substantial change in the cost of reasonable and necessary expenses to either party." ORS 107.135(2)(a) (1983). In 1987, the legislature further amended that section to provide that "[a] substantial change in economic circumstances of a party * * * *is sufficient for the court to reconsider its order of support.*" ORS 107.135(2)(a) (emphasis supplied). That language remains in the statute today. In addition, the 1987 Legislature added a new section describing what courts may consider in determining whether a "substantial change in economic circumstances" has occurred. Under the terms of the new section, also remaining substantially unchanged today, the court must consider all sources of potential income to either party,

including retirement benefits and the reasonable possibility of future income and assets. ORS 107.135(3)(a). The section also provides that, if the substantial change in economic circumstances occurred as a result of a "voluntary reduction in income," such as retirement or a job change, the court must determine whether the voluntary reduction was taken "in good faith," that is, whether it was "for the primary purpose of avoiding the support obligation." ORS 107.135(3)(b).

The statute, as amended in 1983 and 1987, thus imposes at most two conditions on the entitlement to modification of a child support award. If a party requesting modification establishes those prerequisites, then child support must be recalculated in accordance with the Uniform Child Support Guidelines. *See Grage and Grage,* 109 Or App 311, 314, 819 P2d 322 (1991) ("once a change in circumstances sufficient to warrant a modification has been shown, the guidelines control the amount of child support"). First, the party requesting modification must establish that there is a "substantial change in economic circumstances." That, by itself, "is sufficient" to warrant a modification, unless the change was occasioned by a "voluntary reduction" in income. In the case of a voluntary reduction, a second condition must be established, namely, that the voluntary reduction was taken in good faith. That is all that the statute requires. There is no mention of a need to prove that modification of any sort will not work a hardship on the nonpaying spouse or the child. There is no mention of other equitable considerations.

It is true, as mother and the majority contend, that several decisions of this court after 1987 continued to apply the *Nelson* rule and required proof not only of a substantial change in economic circumstances but also that changing the amount of support would not work an undue hardship on the children. In *Gay and Gay,* 108 Or App 121, 814 P2d 543 (1991), for example, we held that:

"A voluntary decrease in an *obligor's* income may justify a reduction in child support, if the change is made in good faith, ORS 107.135(3)(b); *Jones and Jones,* 106 Or App 264, 267, 806 P2d 1170 (1991), and if the hardship to the obligor if the decrease is not allowed outweighs the hardship to the child that the reduction would cause. *Nelson and Nelson,* 225 Or 257, 264, 357 P2d 536 (1960)."

*Id.* at 125 (emphasis in original). *See also Hogue and Hogue,* 115 Or App 697, 700, 839 P2d 760 (1992), *adhered to as modified* 118 Or App 89, 846 P2d 422 (1993) ("[E]ven when an obligor acts in good faith, child support will not necessarily be modified. We evaluate the 'particulars of his changed circumstances, considering all the relevant factors,' as well as [the child's] welfare.") (citing *Jones,* 106 Or App at 268).

In *Willis,* however, the Supreme Court held that it is inappropriate to condition a modification on equitable conditions not enumerated in the statute. In that case, the father was imprisoned after the dissolution judgment, and the trial court suspended his obligation to pay child support until his release. We reversed, holding that the father "should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars." *Willis,* 109 Or App 584, 587, 820 P2d 858 (1991), *rev'd* 314 Or 566, 840 P2d 697 (1992). We cited as authority for our decision the Supreme Court's earlier decision in *Nelson,* as well as our own prior decisions in *Gay* and *Jones.*

The Supreme Court reversed, chiding us for failing to apply ORS 107.135, which includes no such equitable considerations in its terms. *Willis,* 314 Or at 569. The court quoted the statute and concluded that modification depended on the following considerations only:

> "Father sought to modify his support obligation alleging a 'substantial change in economic circumstances.' ORS 107.135(2)(a). He sought a reduction of the support obligation 'based upon a reduction of [his] financial status,' ORS 107.135(3)(b), and mother opposed the motion. Under ORS 107.135(3)(b), the question is whether the reduction of father's financial status was a 'voluntary reduction of income or self-imposed curtailment of earning capacity' and, if so, whether that reduction or curtailment 'was not taken in good faith but was for the primary purpose of avoiding the support obligation.' "

*Id.* at 570. As for this court's reliance on the father's unclean hands, the court made short work:

> "The equitable doctrine of 'unclean hands,' on which the Court of Appeals relied below, does not bar a party from seeking a modification of the child support provisions of a

dissolution judgment, *because ORS 107.135 supplies the governing standard in this situation."*

*Id.* at 569 n 1 (emphasis supplied). The court then held that the father's incarceration did occasion a substantial change in economic circumstances. In so doing, the court considered whether the father had any sources of income or assets in spite of his incarceration, as ORS 107.135(3) requires. The court found that there was no evidence of additional income or assets. The court noted that the mother had conceded that the father had not become incarcerated to avoid his support obligation. Accordingly, the court concluded that the father had satisfied the requirements of ORS 107.135. It reversed this court and affirmed the order of the trial court suspending the support obligation. *Id.* at 570-71.

With the foregoing in mind, I turn to the language of the statute and the facts of this case. As in *Willis*, father in this case has moved to modify his support obligation, alleging a "substantial change in [economic] circumstances" under ORS 107.135(2)(a). As in *Willis*, he seeks a reduction of the support obligation "based on the reduction of [his] financial status." ORS 107.135(3)(b). As in *Willis*, mother in this case opposed the motion. As in *Willis*, therefore,

"the question is whether the reduction of father's financial status was a 'voluntary reduction of income or self-imposed curtailment of earning capacity' and, if so, whether that reduction or curtailment 'was not taken in good faith but was for the primary purpose of avoiding the support obligation.'"

*Willis*, 314 Or at 570, *quoting* ORS 107.135(3)(b).

The trial court in this case found, and no one contests, that father's reduction of financial status was made in good faith and that it produced a substantial reduction in his income. That being the case, the requirements of ORS 107.135 have been met, and father is entitled to a modification of his support obligation. The trial court therefore erred, in my view, in failing to modify the award. I hasten to add that I venture no opinion as to what extent the award must be modified. That is for the trial court to determine by applying the child support guidelines. *Grage*, 109 Or App at 314. The guidelines statute and implementing regulations

expressly provide a mechanism for taking into account "special hardships of a parent" and the "needs of the child" in setting the amount of the modified support award. ORS 25.280; OAR 137-50-330(2)(a)(F). The sole issue that is before us at this juncture is whether the trial court correctly determined that, despite father having established the requisite good faith and substantial change in economic circumstances, there is no basis on which to modify the child support award. In the light of the language of the statute, particularly as construed by the Supreme Court in *Willis*, it is clear that the trial court erred.

The majority arrives at a different result on the basis of the trial court's application of the *Nelson* rule. The majority explains the continued vitality of *Nelson* by appealing to a rule of construction and an equitable catch phrase, but, in my view, the aphorisms simply do not support the majority's opinion.

The majority first appeals to the rule that "[i]t is well established that the text of a statute must be viewed in the light of judicial interpretations." 146 Or App at 404-05. Of course, prior construction is always a relevant consideration. But as a matter of common sense, such prior construction applies only to the extent that the court actually construed the statute at issue. In this case, the majority appeals to the rule as a basis for incorporating the 1960 *Nelson* decision into a statute that was not enacted until nearly three decades after *Nelson* was decided. Thus, the rule the majority cites simply does not apply.

The majority suggests that, if *Nelson* does not apply directly, by virtue of the rule of prior construction, it certainly applies indirectly, by virtue of our own cases continuing to apply the older decision to the newer statute. The problem with that argument is that it ignores the fact that the Supreme Court held in *Willis* that we were wrong when we did so. The majority, of course, does not like the court's decision in *Willis*, as evidenced by the scant attention that it pays to its holding. Instead, it reads the case quite narrowly and upbraids me for reading too much into a mere footnote in the Supreme Court's decision. 146 Or App at 405-06. The majority, however, mischaracterizes my reading of *Willis* and, having defeated the straw man, declares victory. In my view, the

clear holding of a Supreme Court decision may not so artfully be avoided.

To begin with, the majority ignores the fact that we relied on *Nelson* as support for our consideration of equitable factors in *Willis*, and still the Supreme Court reversed. The majority further ignores the fact that the Supreme Court explained that it rejected our consideration of unclean hands because that equitable factor is not contained in the language of the statute. I cannot imagine by what feat of semantic sleight of hand we may read *Willis* to discountenance one equitable consideration, because it is not contained in the statute, but to allow other considerations, even though they also are not contained in the statute. Most important, the majority's reading of *Willis* cannot be reconciled with the Supreme Court's *holding* in that case, which was that husband was entitled to seek modification of his support obligation, because he had established the two—and only two—statutory requirements:

> "whether the reduction of father's financial status was a 'voluntary reduction of income or self-imposed curtailment of earning capacity' and, if so, whether that reduction or curtailment 'was not taken in good faith but was for the primary purpose of avoiding the support obligation.' "

314 Or at 570. That, I hasten to note, is not a footnoted aside; it is the Supreme Court's construction of the statute.[1]

The majority also appeals to equity as a basis for considering, at the outset, the potential hardship of modifying a child support award. According to the majority,

> "[b]ecause these are suits in equity and the interests of the children are of paramount importance, it is appropriate that the court take into consideration the effect that a reduction in support will have on the children."

146 Or App at 405. The majority never explains how equity empowers this court to write into a statute a consideration

---

[1] I am not alone in questioning the vitality of our post-*Nelson* cases in the light of that construction. *See* Maureen H. McKnight, *Modification, in* 2 *Family Law* § 12.86 (1994 Supp) ("In deciding its first case under ORS 107.135(3)(b), the Oregon Supreme Court cast some doubt on the scope of the inquiry. The [*Willis*] decision * * * focuses only on the first two factors, which are statutorily based * * * [and] did not mention the additional showing of comparative hardship to the obligor and the child required by the court of appeals precedents.").

that simply is not there. *See* ORS 174.010. Aside from that, the majority's appeal to equity once again attacks a straw man. I do not assert that trial courts are without authority to consider hardships to children or to parents in modifying child support. To the contrary, I have taken pains to note that the child support statutes and regulations expressly provide for consideration of such matters *in the modification process.* They do not authorize the courts to avoid the process, however, merely by concluding, at the outset, that it would be inequitable to consider modifying a child support award, even when the party seeking support otherwise satisfied all statutory requirements for doing so.

Finally, the majority chastises me for "forgetting" that the modification statute is discretionary and "does not require a wholesale adoption of the moving party's position." 146 Or App at 406. According to the majority, "[a] court may reconsider its original award and conclude that it remains correct." *Id.* Once again, the majority resorts to disproving an argument that I do not make. And once again, I remind the majority that the child support statutes and rules plainly allow the courts to consider hardships to the parents and the needs of the child *in the proper sequence,* and that there is nothing in those statutes or rules that prevents a court that entertains a modification request from concluding that, in the final analysis, no modification of the award is appropriate.

In short, the command of the statute, as construed by the Supreme Court in *Willis,* is clear. If a party seeking modification establishes the two prerequisites for obtaining reconsideration of a child support obligation, the court must go forward with the reconsideration process in accordance with the child support statutes and regulations. Whether that process results in an actual modification of the award will depend on the court's evaluation of the pertinent facts in the light of those statutes and regulations. But the court may not anticipate that result and refuse to go through the process.

I dissent.

Richardson, C. J., and Leeson and Armstrong, JJ., join in this dissent.