Argued and submitted November 21, 1996, reversed and remanded with
instructions March 19, 1997

In the Matter of the Marriage of

### D. Duane DENOTTA,
*Respondent,*

*and*

### Margaret Lenore DENOTTA,
*Appellant.*

(DR 91-12-047; CA A91804)

935 P2d 475

150

Brad Littlefield argued the cause and filed the brief for appellant.

Barbara P. McFarland argued the cause for respondent. With her on the brief was Adams, DeBast, Helzer, McFarland, Richardson & Uffelman.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Wife appeals the modification of spousal and child support. We reverse.

The dissolution judgment was entered in February 1993, following an August 1992 trial. At the time of the trial, husband worked for Mobil Oil as a territory manager with a salary of $75,000 a year plus benefits. After the trial, but before entry of the judgment, the parties reached a settlement that awarded spousal support of $2,000 a month for five years and child support of $1,000 a month for the parties' three children. At about the same time as the entry of the judgment, husband filed a motion for a new trial or, in the alternative, a motion for relief from judgment or for modification of the judgment. The court denied the motion with leave to petition for a modification.

In March 1993, husband filed a motion for modification of spousal and child support. He asserted, *inter alia*, that there had been a material change in circumstances in that he had left Mobil Oil to work for Petrolube in an "entrepreneurial venture" and that his business interests would be unlikely to produce any cash flow. Following a July hearing, the court dismissed husband's motion on the ground that husband "had not established a legally sufficient change of circumstances."

In March 1995, husband brought this modification proceeding seeking termination of spousal support and a decrease of his child support obligation. Husband claimed a change in circumstances because he had been terminated by Petrolube and is now working with Hydraulic Repair and Design at an income of $30,000 a year. The evidence at the hearing showed husband's monthly salary is $2,500 and a $450 car allowance. In addition, husband has a 50 percent interest in a franchise real estate company and a corporation that owns 40 acres of land in Washington that husband and his partner plan to improve and sell in five-acre lots. The lots are currently listed for sale at $60,500 to $70,000 each. Husband's 1994 income tax return shows K-1[1] income of $22,079.

---

[1] A Schedule K-1 reflects shareholder income.

Husband testified that that income was unavailable to him because it went to his partner to pay liabilities that the partner had incurred in the business. Since the dissolution, husband has lived in the parties' waterfront Hood Canal property, which is free and clear.[2] His Uniform Support Affidavit claimed monthly food expenses of $600 and entertainment expenses of $250.

The modification court found that husband's K-1 income was not a "resource" from which husband could pay support. It held that there had been a change of circumstances "in that [husband's] income has dropped from $51,000 to $30,000 per year." The court reduced the spousal support award to $1,100 and child support to $353 a month.

■ Wife assigns error to the court's modification of the support obligations. Wife argues that husband has failed to prove a change of circumstances between the second and third modification proceedings. She argues that, in the second proceeding, husband represented to the court that his income was $51,000. She contends that the evidence in this third proceeding shows that husband's income was $57,394, including the K-1 income. She argues that the court erred in not including the K-1 income and, when it is included, that husband did not show a change of circumstances.

We agree with wife that the court erred in holding that husband could choose to disregard his K-1 income as part of his income. In *Perlenfein and Perlenfein*, 316 Or 16, 848 P2d 604 (1993), the Supreme Court considered whether undistributed income of a closely held corporation that is attributable to a minority shareholder for income tax purposes is also attributable to the shareholder for purposes of determining a child support obligation. The court held that it is, but that a parent could rebut the presumptive amount of support derived by using that income by evidence that the income was "not actually available to the parent[.]" *Id.* at 25.

---

[2] Wife testified that the property was worth $300,000 to $350,000. It has a view of the Olympic Mountains and consists of two buildable lots that include harvestable timber. The dissolution judgment requires that the property be sold. Husband has not put the property on the market, testifying that he wants to buy out wife's one-half interest.

However, in *Perlenfein*, the income was undistributed income of a closely held corporation. Here, there was no evidence that husband was a minority shareholder with no control over the distribution of proceeds, and his income tax return shows $22,079 in income from his corporations. Although the court found that the K-1 income was paid to husband's business partner "to effectuate the long-term goals of the partnership," and, thus, that the K-1 income provides him with "no capacity" to pay support, husband produced no documentation to support his claim that the proceeds went entirely to his partner or even that he was obligated to pay them to his partner. The only evidence of the unavailability of the income was husband's testimony. If we were to conclude that husband's K-1 income could be excluded simply because he promised the money to another party, then a parent could claim that any debt acquired after dissolution could be used as a means to limit support obligations. *Perlenfein* does not dictate that result, and we decline to accept it.

■    Husband argues, however, that he has established a change of circumstances even if the K-1 income is included:

> "Wife * * * has added the partnership income to Husband's current salary income while failing to add the partnership income to his salary income at the time of the last hearing. * * * If we compare apples and apples, we compare Husband's salary income of $51,000 at the time of the last hearing versus $30,000 today; or we compare his salary plus K-1 income of $99,000 at the time of the last hearing versus $52,079 today."

Wife argues that, at the 1993 modification hearing, husband's support affidavit showed a $51,000 salary and no K-1 income. However, in this proceeding wife herself introduced husband's 1993 income tax return that does show K-1 income. Husband's income has decreased between 1993 and 1995. Nonetheless, we agree with wife that husband's change of economic circumstances here is not sufficient for reconsideration of support provisions. ORS 107.135(3)(b).

The evidence shows that husband has the capacity to earn more than his present income.[3] *See Hogue and Hogue*,

---

[3] Wife does not contend that husband is underemployed because of bad faith.

115 Or App 697, 700, 839 P2d 760 (1992), *mod* 118 Or App 89, 846 P2d 422 (1993) (although husband did not act in bad faith in changing jobs that reduced his earnings, support was not modified as he did not establish that his ability to pay had changed). Husband has a degree in engineering. His employment with Petrolube presented him with a chance to turn the business from a losing to profitable one and to buy a 50 percent interest in it. Although he was unable to buy into the business, when he left the company it was profitable. Husband's job with Hydaulic is to establish a fluid care division in the company. He testified that he is not satisfied with his present income and hoped shortly to again be making $75,000 a year. Also, about the time of the 1995 hearing, husband had been in contact with Mobil and discussed job opportunities. He testified that Mobil was downsizing, and, if he were to work for the corporation again, it would be at a lesser salary and he would have to relocate.

■     We also agree with wife that it is appropriate to give some consideration to husband's assets in determining his ability to pay his agreed support obligation. Under ORS 107.135(3)(a), in considering whether a change of circumstances is sufficient for reconsideration of spousal or child support provisions, the court shall consider "income opportunities and benefits of the respective parties from all sources[.]" In addition to the K-1 income, husband has a one-half interest in the Hood Canal property, which, under the terms of the dissolution judgment, is to be placed on the market. Husband testified that he does not intend to sell the property and planned to buy out wife's interest. Apparently husband believed he had sufficient extra resources to make this possible. Thus, irrespective of his desire to keep it, the property is available as a potential source of income.

     We also agree with wife that husband failed to show that failure to reduce his support obligation would result in greater hardship to him than to wife and his children. *Gay and Gay*, 108 Or App 121, 125, 814 P2d 543 (1991). In *Glithero and Glithero*, 146 Or App 398, 403, 934 P2d 492 (1997), we reaffirmed that, even when an obligor's income has been reduced in good faith, a support obligation will not necessarily be reduced. The particulars of the obligor's changed circumstances are evaluated, as well as the child's welfare.

*Hogue*, 115 Or App at 700. A reduction may be justified if the hardship to the obligor outweighs the hardship to the children that the reduction would cause. *Gay*, 108 Or App at 125. We also consider the position of the obligee, who might be faced with the challenge of making ends meet. *Jones and Jones*, 106 Or App 264, 268, 806 P2d 1170 (1991).

Here, it is difficult to see what hardship will result to husband from a failure to reduce his support obligation. Although husband's salary has decreased, he continues to live rent and mortgage free in waterfront property. He has a car allowance of $450 a month, and his expenses for food and entertainment have actually increased since the 1993 hearing. In his Uniform Support Affidavits, husband claimed $400 a month for food in 1993 and $600 in 1995; he claimed $100 a month for entertainment in 1993 and $250 in 1995.

On the other hand, the evidence shows that wife and children are suffering a continual erosion in economic security. After the dissolution, wife and children moved from Lake Oswego to a home in Gearhart.[4] After 13 months, they moved to an older, smaller home in Seaside, because wife could not make the payments on the Gearhart house. Wife has sold the 1990 Chrysler van awarded to her in the dissolution and now drives a 1972 Volvo. She has sold jewelry, art, furniture, and family china to buy groceries and pay the heating bill. She and the children have discontinued counseling, and she has borrowed more than $16,000 from her family. She purchases clothing for the children at discount and thrift stores and has not purchased clothing for herself.

The changes in husband's economic circumstances have not resulted in hardships to him that outweigh those experienced by wife and his children, and a reduction in husband's support obligation will only exacerbate those hardships. The change in circumstances is not sufficient to justify reconsideration of the support provisions, and the court erred in modifying them. *See Glithero*, 146 Or App at 404 (Father

---

[4] Wife suffers from eosinophilia myalgia syndrome and cannot work. Her medical problem was diagnosed after the dissolution agreement was signed but before the judgment was entered. The disease attacks the connective tissue and destroys it, and there is no cure or relief for wife's neuro-cognitive symptoms.

did not show that the continued payment of his current support obligations will cause him to suffer any actual hardship, and the evidence shows that his children and wife might suffer from a reduction in support.).

Reversed and remanded with instructions to deny husband's motion to modify. Costs to wife.