Argued and submitted June 10, remanded with instructions in part; otherwise affirmed December 4, 1996

In the Matter of the Marriage of

Mary Irene LAWLOR,
*Appellant,*

*and*

Shannon Patrick LAWLOR,
*Respondent.*

(15-94-08540; CA A89886)

928 P2d 1003

Ralph A. Bradley argued the cause and filed the briefs for appellant.

William A. Furtick argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

In this appeal from a judgment of marital dissolution, wife challenges various rulings affecting child support, property division and attorney fees. We reverse in part and affirm in part.

The parties were married for 22 years, from 1973 to 1995. During most of that time, wife stayed at home to raise the children and husband worked for Southern Pacific Railroad (SP), where he has been employed since 1963.

At trial, the parties produced evidence that in 1994 wife earned $7,691 working part-time in a secretarial position and husband earned $80,990 working full-time as an SP brakeman. Wife (age 50) was awarded custody of the parties' three minor children and husband (age 51) was ordered to pay $808 per month as child support. Wife also was awarded $1,200 per month spousal support for four years, and $700 per month thereafter; that award is not at issue on appeal.

The parties' largest asset is the balance of a $187,790 "FELA settlement" that husband secured through his own negotiation efforts as compensation for a 1988 work-related injury. Some of the settlement funds were used to reimburse SP for husband's medical costs and to pay off family bills. Husband placed the remaining funds in MFS and Keystone investment accounts. At the time of trial, a total of $106,428 remained in those accounts. The trial court ruled that the funds were husband's property alone and awarded them to him. It also awarded husband the parties' joint Smith Barney account, valued at $2,519, apparently believing that that account also had been funded by the FELA settlement. The balance of the marital property was divided, with wife receiving the "long half." The court also awarded husband three life insurance policies, including one that insured wife's life. Finally, the court required that the parties pay their respective attorney fees and costs.

■ On appeal, wife first contends that in setting the child support amount, the trial court improperly calculated husband's gross income by *excluding* both the annual productivity bonuses that husband has been receiving since 1982

and the interest and dividends from the MFS, Keystone and Smith Barney accounts, which the court referred to collectively as "the FELA accounts." Wife submits that the court's approach does not comport with the child support guidelines.

Husband testified that he would not know the precise amount of income from his 1995 interest/dividends and work bonus until the end of that year.[1] The court decided to disregard that income and to instead calculate husband's income on the basis of the maximum possible salary that he can earn at SP, $5,121 per month. To earn that amount, husband must work or be available to work 24 hours per day, seven days a week. If he takes a day off to attend to personal business such as a medical appointment, his income is reduced by $171. At trial, he asked the court to allow him eight days off per month. The court wrote:

"The court has not calculated into [husband's] income figures an amount for the annual productivity bonus. Thus, [wife] will have no claim on the bonuses when received nor can they be considered as added income or change of circumstances justifying an increase in either child or spousal support. The court in arriving at the $5,121 income figure from [husband] has not allowed a deduction for layoff days, nor an increase attributed to interest income on the FELA accounts."

Although that approach appears to have been a reasonable compromise, wife nonetheless is correct that the child support guidelines required the trial court to include in husband's gross income *all* of his sources of income, including the annual bonus and the interest/dividend income. *See Tofte and Tofte*, 134 Or App 449, 453, 895 P2d 1387 (1995) (trial court erred in failing to include annual bonus in its computation of the husband's gross income).[2] The court did not have

---

[1] In 1994, the productivity bonus was $17,756 gross ($9,000 net), but there was testimony at trial that the bonus could be approximately 57 percent lower in 1995. The precise amount of the bonus cannot be determined until the end of the calendar year, because it is calculated on the basis of both husband's personal "work credits," which are determined by the number of days he works, and a figure generated by SP that factors in the number of railroad jobs, workers, days worked and profits. The amount of annual income from dividends and interest apparently has ranged from $4,200 to $655.

[2] Under OAR 137-50-340, gross income is defined as "income from any source, including but not limited to * * * bonuses, dividends, * * * [and] interest."

discretion to exclude those sources of income; it was required to apply the guidelines formula mechanically. *Rossi and Rossi*, 128 Or App 536, 543, 876 P2d 820 (1994). Accordingly, we remand for recalculation. If, after correctly applying the guidelines formula on remand,[3] the trial court finds that husband has rebutted the presumption that the number that the formula yields is the just and appropriate amount in this case, the court must make a specific finding to that effect. ORS 25.280; OAR 137-50-330(2)(b); *Perlenfein and Perlenfein*, 316 Or 16, 24-25, 848 P2d 604 (1993).

■■ Next, wife contends that the trial court erred in ruling that the FELA settlement was not a marital asset. Wife is correct. Funds acquired by either party during a marriage are, by definition, marital assets. *Pugh and Pugh*, 138 Or App 63, 69, 906 P2d 829 (1995), *rev den* 322 Or 644 (1996). However, that fact does not determine how the asset will be distributed, because *all* property, separate or marital, is subject to distribution in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f); *Stice and Stice*, 308 Or 316, 324-25, 779 P2d 1020 (1989).

■ Marital assets are subject to "a rebuttable presumption that both spouses have contributed equally to the acquisition * * * [thereof], whether such property is jointly or separately held." ORS 107.105(1)(f). Notwithstanding its erroneous ruling, noted above, the trial court *treated* the FELA settlement as a marital asset and held that "the presumption of [wife's] equal contribution to the FELA proceeds has been overcome." Wife challenges that ruling.

We begin by noting that over $20,000 of the settlement funds were used to pay off household bills and purchase a car for the parties' daughter, which suggests that the funds were available to support the parties' standard of living. *See Pugh*, 138 Or App at 69. Both parties testified that the funds were going to be used "for retirement" and for the children's college expenses. Nothing in their testimony or in the record discloses an "agreement or common understanding between the parties" that the funds were to be husband's separate

---

[3] That recalculation may also take into consideration the number of days, if any, that husband has historically taken off each month, and his salary may be adjusted accordingly.

property. *Stice*, 308 Or at 328. Except for the FELA accounts, the parties' financial affairs were commingled in all other respects throughout the marriage.[4]

Those facts support the presumption of wife's equal contribution, primarily by casting doubt on husband's claim that the award was his separate property. *See Pugh*; *Stice*. However, one critical fact distinguishes this case from *Stice*. There, the wife had been *able* to acquire the disputed stock because of the financial support that she received from the husband, who paid half of the parties' household bills. Here, it is undisputed that husband acquired the asset by his own negotiating efforts, unaided by any direct or indirect contribution by wife.

This case also is distinguishable from *Pugh*, in which the presumption of equal contribution was not rebutted as to a settlement award for personal injuries suffered by the husband. In *Pugh*, the award was acquired by the efforts of both parties, including wife's agreement to forgo her loss of consortium claim. The annuity named the parties as joint beneficiaries, the award monies were apparently available to both parties, and the payments were used to support the parties' standard of living for 14 years. 138 Or App at 69. In the present case, wife made no separate claim against SP after husband was injured. Husband alone decided whether and when to make the settlement funds available for family use. *Johnson and Johnson*, 138 Or App 462, 466, 909 P2d 185 (1996). Although a portion of the settlement award was used to pay bills, that occurred on only two occasions—when it was first acquired, and at the time of the parties' separation.[5] Thus, there was not a pattern of spending the settlement award funds to support the family's lifestyle. On these facts, we affirm the trial court's ruling that husband has rebutted the presumption of wife's equal contribution to the acquisition of the FELA settlement funds.

---

[4] Although the FELA settlement funds were held in husband's name alone, that fact is not dispositive. *See Stice* (stock purchased by wife and held in her name alone did not rebut presumption of husband's equal contribution); ORS 107.105(1)(f) (presumption of equal contribution applies to marital assets "whether such property is jointly or separately held").

[5] According to husband, the second withdrawal was due to the added expense of operating two households.

■   The next issue is whether it was just and proper under the circumstances to award all of the remaining settlement funds to husband. Among other things, wife argues that she held the expectation that the funds would be available to support her during retirement, and it therefore would be inequitable to award her no part of this substantial marital asset. The trial court specifically ruled that "any equitable claim [wife] has on these accounts is satisfied by the fact that she has already benefitted from these accounts during the marriage and is receiving the long half of the [remaining] property[.]" We agree with that assessment, especially in light of the fact that wife was awarded part of husband's retirement benefits in addition to her own PERS retirement account. The reasonable expectations that she may have held in that regard were thereby met.

■■   Next, wife seeks additional property, specifically, the Smith Barney account and a house that the parties refer to as the "15th Street property." The house on 15th Street was purchased by wife before the marriage, but she had virtually no equity in it at that time. It is smaller than the family home, which was awarded to wife. We find no error in the trial court's award of the 15th Street property to husband. As for the Smith Barney account, husband concedes that it was marital property and that the trial court erred in awarding it to him as one of the FELA accounts. Given the length of the parties' marriage and wife's health, it is just and equitable to award the Smith Barney account to wife.

Wife's next assignment of error challenges the trial court's award of three life insurance policies to husband. Two of the policies insure husband's life and one insures wife's life. Husband concedes that wife should have been awarded the policy that insures her life. We accept that concession and are unpersuaded by wife's arguments as to her entitlement to a portion of the other two policies.

Lastly, we reject wife's contention that the trial court abused its discretion when it required the parties to pay their respective attorney fees.

Remanded for recalculation of child support award and for entry of modified judgment awarding Smith Barney

account and Mutual of Omaha life insurance policy to wife; otherwise affirmed. No costs to either party.