Argued and submitted March 3, 2004, on appeal, remanded for recalculation of child support; otherwise affirmed; affirmed on cross-appeal March 23, 2005

In the Matter of the Marriage of

Julieanne A. THANHOUSER,
*Appellant - Cross-Respondent,*

*and*

Edwin W. THANHOUSER, Sr.,
*Respondent - Cross-Appellant.*

0104-63650; A118484

108 P3d 667

J. Richard Urrutia argued the cause for appellant - cross-respondent. With him on the briefs were Cecil A. Reniche-Smith, Williams Kastner James & Urrutia, and Zimmer & Bunch LLC.

Michael P. Opton argued the cause for respondent - cross-appellant. With him on the briefs was Opton & Galton.

Before Landau, Presiding Judge, Armstrong, Judge, and Kantor, Judge pro tempore.

ARMSTRONG, J.

## ARMSTRONG, J.

Wife appeals from a dissolution judgment, contending that the trial court erred in its award of spousal and child support. Husband cross-appeals, assigning error to the spousal support award. We reject without discussion the parties' arguments about spousal support and write only to address child support. On *de novo* review, ORS 19.415(3) (2001), we conclude that the trial court erred in its child support award.[1] We therefore remand for recalculation of child support and otherwise affirm.

We state the pertinent facts as we find them on *de novo* review. Wife graduated from college in 1975 with a degree in anthropology. She entered a doctoral program in anthropology in 1976 but left the program shortly thereafter to work full time. The parties married in December 1980. In 1982, wife resigned from her position as a product support manager for Tektronix after she had worked there for five years. Since that time, she has not worked outside the home but has been the primary caretaker for the parties' four sons, who, at the time of trial, were ages 19, 17, 15, and 14. From 1983 to 1996, wife was chapter chairman of volunteers and served on the board of directors for a local chapter of the American Red Cross. During the marriage, wife often volunteered in her sons' schools and served on the Oregon Episcopal School's board of trustees from 1992 through 2000. Wife also successfully completed a master's degree in anthropology in 1993. Wife filed her petition for dissolution of marriage in April 2001.

Up to the time of trial, the parties' children had attended private schools. The oldest attended New York University, the middle two attended the Oregon Episcopal School, and the youngest attended the Phelps Academy in Pennsylvania. As part of their marital settlement agreement, the parties stipulated that they would split the cost of their

---

[1] The legislature amended ORS 19.415(3) in 2003. *See* Or Laws 2003, ch 576, § 88. We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because those amendments apply to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a.

sons' college educations less any scholarships or contributions by wife's parents. The parties also stipulated that they would split the cost of sending their youngest son to a private high school. They also agreed that husband would receive, among other things, a promissory note for $430,000 that was to be paid in 15 annual installments of principal and interest beginning January 1, 2003. The promissory note also provided that it could be paid in full at any time without penalty.

At trial, wife argued that husband should be required to pay half the cost of sending the parties' middle two children to private high school. She argued that the parties had had an implicit agreement to send all of their children to private school and that one of the middle children, the 17-year-old, had special needs that required him to attend a private high school. She also argued that, for the purposes of calculating child support, no potential employment income should be attributed to her because she had been out of the job market and the children's needs required her to stay at home. Husband responded that he had not agreed to pay half the cost of sending the middle children to private high school and should not be required to pay that cost. He also contended that the 17-year-old's needs could be adequately addressed in the public schools and did not require him to attend a private school.

The trial court's dissolution judgment incorporated the parties' stipulations and also provided:

"4. Child Support. Pursuant to the Findings and child support worksheets which are attached hereto as Exhibits C and D, Respondent shall pay Petitioner and Petitioner shall have judgment against Respondent for child support in the following amounts:

"a. Commencing February 1, 2002 and continuing up to and including the payment due on December 1, 2002, the sum of $1,160 per month. * * *

"b. $1,245 per month commencing January 1, 2003 and continuing each month thereafter until further order of the Court or until each child reaches the age of 18, becomes self-supporting, married, emancipated or until age 21, so long as the child is attending school as defined in ORS 107.108 * * *."

(Underscoring in original.) The court based its child support award on findings that wife could earn at least minimum wage and could earn an additional $1,000 a month by reinvesting some of her assets. Specifically, the court hypothesized that wife could sell stock and invest the proceeds in income-producing bonds.[2] In its letter opinion, the court calculated the support award for the middle two children at $1,012 per month under the guidelines and then created its own method to determine the support award for the oldest and youngest children:

> "To address the additional months that [wife] has responsibility for [the oldest and youngest children when they are home from school, the court] invented the following approach. [Wife] has those boys 6 months total or ½ of a third child. The difference between two and three children with these income assumptions is $200. Wife should receive [another] $100 per month or a total of $1,112 per month in child support."[3]

On appeal, wife argues that the court erred in calculating husband's child support obligation because it "failed to follow the protocol for calculating support established by the Oregon Child Support Guidelines," erroneously determined the gross income of each party for purposes of calculating child support, and "failed to consider private school expenses for [the middle two children] as additional expenses requiring an upward deviation from the presumed amount[.]" Husband responds that the court did not err in calculating his child support obligation and that, if it did err, we can now calculate the correct amount of that obligation.

■ We begin with whether the trial court erred when it deviated from the child support guidelines without determining the presumed amount of child support or making specific

_____

[2] We note that both parties presented evidence on the dividends that they received from stock. The trial court included those dividends in the parties' gross incomes. We understand the trial court's opinion to indicate that, through a reinvestment of her assets, wife would have additional income, after accounting for lost dividends, of at least $1,000 per month. Neither party presented any evidence about the rate of return on the stock that they currently held.

[3] We note that $1,112 is less than the child support awarded in the judgment. That discrepancy stems from the court's initial miscalculation in its letter opinion of husband's gross income. The court recalculated husband's gross income when it made its award of child support in the judgment.

findings to support a deviation from that amount. Wife is correct that the court was required to determine the presumed amount of child support and then, if it chose to deviate from that amount, to make findings to support the deviation. *See* ORS 25.280; OAR 137-050-0330 (2002). The court erred by failing to do that. Accordingly, we remand the issue of child support to the trial court. *See, e.g., McGinley and McGinley*, 172 Or App 717, 735-36, 19 P3d 954, *rev den*, 332 Or 305 (2001); *Larkin and Larkin*, 146 Or App 310, 314-15, 932 P2d 115 (1997).

 Wife next argues that the trial court erred in three respects in calculating the parties' gross income for purposes of child support. First, she argues that it erred in attributing to her a full-time minimum wage income in 2002 and an employment income of $25,000 a year thereafter. Second, she argues that it erred in including income that she could earn if she reinvested some of her assets. Finally, she argues that it erred when it did not include, as part of husband's gross income for 2002, interest income that he would earn on the promissory note that he had received from her.

OAR 137-050-0360 (2002) creates a rebuttable presumption that an unemployed parent can be employed full time at minimum wage or greater. The trial court found that wife is "eminently employable." We agree and therefore conclude that the court did not err in attributing to wife minimum wage income for 2002 and an income at $25,000 a year thereafter. Wife argues, however, that, even if she could earn that income, her children's special needs require that she not work and instead stay home to address their needs. Although the record indicates that one of the parties' children has attention deficit hyperactivity disorder and another has a variety of learning disabilities, nothing in the record indicates that it is preferable or necessary for wife to remain at home in order to help the children. We therefore conclude that wife has not rebutted the presumption that she can engage in full-time employment.

Wife also challenges the court's decision to attribute to her an additional $1,000 in monthly income that the court found she would earn if she converted some of her existing

assets into assets that would generate more income. She contends that the child support guidelines do not permit the court to include in gross income the amount that she would earn if she acted on the court's implicit direction to acquire different assets in order to increase her income. Under the applicable rule, "gross income" includes

> "income from any source including, but not limited to, salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, interest, honoraria, trust income, annuities, return on capital, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, including lottery winnings, and alimony or separate maintenance received."

OAR 137-050-0340(1) (2002).

We asked the Oregon Department of Justice (DOJ), the agency that adopted the child support guidelines, for its interpretation of them. Specifically, we asked whether the guidelines permit a court to include in gross income the income that a parent would earn if the parent altered the form or nature of the parent's assets and, if not, whether the income resulting from such a modification could nevertheless be considered in rebutting the presumed amount of child support.

DOJ answered "no" to the first question, explaining that OAR 137-050-0340(1) does not include in gross income the income that would be earned by converting existing assets into assets that would generate greater income. It answered "yes" to second question, explaining that it understood the rules to provide "the court with considerable latitude to order child support in an amount other than the presumed amount calculated under OAR 137-050-0330 [(2002)]. As long as the necessary findings are made, the presumption may be rebutted based on" the nonexclusive criteria listed in OAR 137-050-0330(2)(a) (2002).[4] We agree with the DOJ's interpretation of OAR 137-050-0330 (2002) and OAR 137-050-0340 (2002). We therefore conclude that the trial court

---

[4] Those criteria, formerly listed under OAR 137-050-0330(2)(a) (2002), are now set forth at OAR 137-050-0333.

erred in attributing to wife in its calculation of her gross income the income that she would earn if she reinvested some of her assets.[5]

■ We turn to wife's argument about the promissory note. As quoted above, interest income qualifies as gross income when it is received. OAR 137-050-0340(1) (2002). It is proper for a trial court to include projected interest income in a party's gross income for the year that the income will be received. *See Lawlor and Lawlor*, 145 Or App 58, 61, 928 P2d 1003 (1996) (although "[h]usband testified that he would not know the precise amount of income from his 1995 interest/ dividends and work bonus until the end of that year[,] * * * the child support guidelines required the trial court to include in husband's gross income *all* of his sources of income, including the annual bonus and the interest/ dividend income" (emphasis in original)). The promissory note provides that husband is to receive interest and that payments on the note were to begin in 2003. The trial court's conclusion that interest on the promissory note should not be included in husband's gross income for 2002 was therefore correct.

We do not address wife's contention that the middle two children need to attend a private high school. That is a factor that wife can ask the court to consider on remand in deciding whether to rebut the presumed amount of child support. OAR 137-050-0330(2)(a)(G) (2002).

On appeal, remanded for recalculation of child support; otherwise affirmed. Affirmed on cross-appeal.

---

[5] To avoid any misunderstanding, we emphasize that the issue in this case concerns the calculation of gross income under circumstances that did not involve a plan by wife to alter the nature or form of her assets. We express no opinion on the proper treatment of a planned change in assets in the calculation of gross income under the guidelines.