Argued and submitted February 24, affirmed November 9, 2011

In the Matter of the Marriage of

Gary Lervold LEIF,
aka Gary Leif Lervold,
*Petitioner-Appellant,*
*and*

Lyrae Tucanna LEIF,
aka Lyrae Tucanna Lervold,
*Respondent-Respondent.*

Douglas County Circuit Court
98DO1874DS; A140273

266 P3d 165

Christopher W. Peterman argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

The trial court entered a judgment that increased father's monthly child support obligation. The court based the increase on what it determined was an increase in father's gross income. Father appeals, assigning error to two aspects of the court's calculation of his gross income. First, father assigns error to the court's inclusion of a $75,000 inheritance in his gross income. Second, father assigns error to the court's use of father's average income from 2004 to 2007 to determine his gross income in 2007. On *de novo* review, ORS 19.415(3) (2007),[1] we conclude that the court did not err either by including the inheritance or by using the four-year average. Therefore, we affirm.

We begin with the relevant facts. Father and mother were married in 1980 and have one child, born in 1993. Their marriage was dissolved in 1998. The trial court ordered father to pay child support. Father receives income from his photography business and rental properties.

In 2007, father received a $75,000 cash inheritance. He used the full amount to pay down a loan that he and his domestic partner had obtained, in anticipation of the inheritance, to consolidate their debts, some of which were incurred as they built a home. The home, among other things, served as collateral for the loan. Father's payment of the inheritance toward the loan was a condition of the loan.

Shortly after father received the inheritance, the Douglas County District Attorney's Office moved to increase father's child support obligation. After a hearing, an administrative law judge increased father's child support obligation from $181 to $907 per month. Father appealed to the circuit court, which reviewed the case *de novo* pursuant to ORS 416.427(6). The court found father's monthly gross income to be $5,822 and entered a supplemental judgment requiring father to pay $633 per month in child support. The court

---

[1] ORS 19.415 was amended in 2009. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

based the $5,822 figure on father's income from the inheritance, $2,083, and from his business and rental properties, $3,739. The court calculated father's income from his inheritance by dividing the inheritance over three years.[2] It calculated father's income from his business and rental properties by averaging the income that was reflected on father's tax returns from 2004 to 2007: $41,968 in 2004; $41,506 in 2005; $55,204 in 2006; and $40,776 in 2007. This appeal followed.

Under Oregon law, the amount of child support a parent must pay is determined by a procedure established by the Department of Justice pursuant to ORS 25.275.[3] That procedure is set forth in the Oregon Child Support Guidelines, *former* OAR 137-050-0320 - 137-050-0490.[4] Under those guidelines, a court uses a formula to determine each parent's presumptive child support obligation. The gross incomes of the parents are factors in the formula. *Former* ORS 137-050-0330 (10/1/07). After determining each parent's presumptive obligation, a court may order a parent to pay a different amount if, in light of certain rebuttal factors established by rule, the presumptive amount is unjust or inappropriate. *Former* OAR 137-050-0333(1) (10/1/07).[5] To order a

---

[2] Father does not object to the trial court's distribution of the inheritance over three years. Child was 15 at the time of the motion to modify father's child support. The court's intent may have been to divide the inheritance over the remaining three years of child's minority.

[3] ORS 25.275 was amended in 2009, after the proceedings occurred below. Or Laws 2009, ch 351, § 7. However, the language relevant to this opinion was not changed. Accordingly, we apply the current version of that statute.

[4] The guidelines were renumbered and amended in 2009 and the new versions became effective in 2010. *See* OAR 137-050-0700 - 137-050-0765. As do the parties, throughout this opinion we refer to the former versions of the pertinent rules.

[5] *Former* OAR 137-050-0333 provides:

"(1) The amount of child support to be paid as determined in [*former*] OAR 137-050-0330 is presumed to be the correct amount. This presumption may be rebutted by a finding that the amount is unjust or inappropriate based upon the criteria included but not limited to as set forth in subsections (1)(a) through (1)(p) of this rule. Both the presumed correct amount and the new amount, in variance from the guidelines, must be recited as part of findings that explain the reason for the variance.

"(a) Evidence of the other available resources of the parent;

"(b) The reasonable necessities of the parent;

"(c) The net income of the parent remaining after withholdings required by law or as a condition of employment;

"(d) A parent's ability to borrow;

parent to pay an amount other than the presumptive amount, a court must state the presumptive amount and explain its reasons for imposing a different amount. *Former* OAR 137-050-0333(2) (10/1/07).

As mentioned, in this case, father argues that the trial court erred in two respects when it calculated his gross income. Specifically, father argues that the court erred by including the inheritance in his gross income and by using a four-year average to calculate his gross income. We address those arguments in turn.

First, father argues that "gross income" as defined by *former* OAR 137-050-0340(1) (10/1/07) does not include inheritances. That provision states that "gross income" includes

> *"income from any source including, but not limited to,* salaries, wages, commissions, advances, bonuses, dividends,

---

"(e) The number and needs of other dependents of a parent;

"(f) The special hardships of a parent including, but not limited to, any medical circumstances or extraordinary travel costs related to the exercise of parenting time, if any, of a parent affecting the parent's ability to pay child support;

"(g) The extraordinary or diminished needs of the child;

"(h) The desirability of the custodial parent remaining in the home as a full-time parent or working less than full-time to fulfill the role of parent and homemaker;

"(i) The tax consequences, if any, to both parents resulting from spousal support awarded, the determination of which parent will name the child as a dependent, child tax credits, or the earned income tax credit received by either parent.

"(j) The financial advantage afforded a parent's household by the income of a spouse or domestic partner.

"(k) The financial advantage afforded a parent's household by benefits of employment including, but not limited to, those provided by a family owned corporation or self-employment.

"(L) Evidence that a child who is subject to the support order is not living with either parent or is a 'child attending school' as defined in ORS 107.108.

"(m) Prior findings in a Judgment, Order, Decree or Settlement Agreement that the existing support award was made in consideration of other property, debt or financial awards.

"(n) The net income of the parent remaining after payment of financial obligations mutually incurred.

"(o) The tax advantage or adverse tax effect of a party's income or benefits.

"(p) The return of capital."

severance pay, pensions, interest, honoraria, trust income, annuities, return on capital, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, *gifts*, prizes, including lottery winnings, and alimony or separate maintenance received."

(Emphasis added.)[6]

From the text of *former* OAR 137-050-0340(1) it is apparent that gross income is broadly defined. It includes "income from any source." *Id.* The definition of gross income does not specifically include "inheritances," but it does include "gifts." An inheritance is a gift given at death. *See, e.g.*, *Finear and Finear*, 240 Or App 755, 761, 247 P3d 1238, *rev allowed*, 350 Or 716 (2011) (treating an inheritance like "any other gift" for the purposes of spousal support). Therefore, we readily conclude, based on the plain language of *former* OAR 137-050-0340(1), that gross income includes inheritances.[7]

Father argues that to determine whether an inheritance should be included in gross income, we should employ a two-part test created by the Colorado Supreme Court in *In re*

---

[6] The new guidelines combine several of the older rules dealing with income, including gross income, into one new rule, OAR 137-050-0715. Although the structure of the income provisions has changed, the new term "actual income" includes all the categories but one that previously made up "gross income" under *former* OAR 137-050-0340, including gifts. The new provision does not include "alimony or separate maintenance received." OAR 137-050-0715(2)(d).

[7] Our conclusion is consistent with the decisions of courts in other jurisdictions whose definitions of "gross income" also include "gifts." *See, e.g.*, *Gardner v. Yrttima*, 743 NE2d 353, 357-58 (Ind Ct App 2001) (court could "discern no appreciable difference between one who receives property by an *inter vivos* gift and one who receives the same or similar property by testamentary transfer, nor can we discern a logical reason to include one [in gross income] and exclude the other"); *Goldhamer v. Cohen*, 31 Va App 728, 736-37, 525 SE2d 599, 603 (2000) ("any inheritance is a gift, whether by will or intestate succession" and not considering appellee's inheritance was "contrary to the express language of the statute"); *Forsythe v. Forsythe*, 41 Va Cir 82, 1996 WL 1065613 at *3 (1996) ("An inheritance is a gift, albeit testamentary in nature. Gifts are clearly gross income under the statute.").

Father's brief cites *Humphreys v. DeRoss*, 567 Pa 614, 790 A2d 281 (2002), but that case is inapposite because the definition of "income" at issue differed from Oregon's definition of "gross income" in two ways. First, it did not include "gifts." Second, although it included "income from an interest in an estate or trust," it "did not include the principal of an inheritance or trust," and, therefore, according to the *Humphreys* court, "it [was] logical to assume that the legislature did not intend to include the principal." 567 Pa at 620, 790 A2d at 285.

*the Interest of A. M. D.*, 78 P3d 741 (Colo 2003). The Colorado child support guidelines at issue in *A. M. D.* provided:

" ' "*Gross income*" *includes income from any source and includes*, but is not limited to, income from salaries; wages . . . ; bonuses; dividends; severance pay; pensions and retirement benefits . . . ; royalties; rents; *interest;* trust income; annuities; capital gains . . . ; *monetary gifts*; monetary prizes . . . ; and alimony or maintenance received.' "

*Id.* at 743 (quoting Colo Rev Stat § 14-10-115(7)(a)(I)(A) (2002)) (emphasis in *A. M. D.*). Interpreting that definition, the court held that "monetary inheritances are in fact 'monetary gifts' under the meaning of [the child support guidelines], and are neither future nor speculative events[.] * * * [A] monetary inheritance may be included in gross income for purposes of calculating child support." *Id.* at 745. But, the court continued, "courts should examine the nature and use of an inheritance when deciding how much of the principal to include in gross income." *Id.* at 746. Specifically, the court held, courts must employ a two-part test:

"First, a court must decide whether an inheritance is monetary. If so, the inheritance is includable in gross income. If not, it does not fit the statutory definition of 'monetary gift' and this ends the analysis. The term 'monetary' refers to cash or '[a]ssets that can be easily converted to cash,' *e.g.*, money markets, mutual funds, stocks, and bonds. *Black's Law Dictionary* 1021 (7th ed. 1999) (defining money). * * *

"If the court finds that an inheritance is monetary, it must next examine the recipient's use of the money. If the recipient uses the principal as a source of income either to meet existing living expenses or to increase the recipient's standard of living, the expended principal should be included in that year's gross income. If the monetary inheritance is saved or invested, such reserved principal is not included in gross income. As we discuss below, the interest generated by the principal is properly considered income."

*Id.* (brackets in *A. M. D.*).

Father argues that we should adopt Colorado's two-part test for determining whether an inheritance should be included in a parent's "gross income" under *former* OAR 137-050-0340(1). We decline to do so because, under Oregon's

child support guidelines, whether income received by a parent should be included in the parent's gross income does not depend on how the income is used or whether it is readily available, although those facts may be relevant to whether the parent's presumptive child support obligation has been rebutted. *Halpert and Leonard,* 157 Or App 276, 279, 970 P2d 253 (1998).

In *Halpert,* we held that the father's voluntary contribution to a 401(k) retirement account was gross income, even though it was an investment and the father would suffer adverse tax consequences if he withdrew the money from the account before he reached retirement age. We explained that "OAR 137-050-0340 does not define gross income as gross taxable income; it is 'income from *any source*[.]' The amount of child support that is presumed to be the correct amount is determined from that gross income. It is in rebutting that amount that tax factors may be considered."[8] 157 Or App at 279 (emphasis and brackets in original; citations and footnote omitted). *See also Perlenfein and Perlenfein,* 316 Or 16, 25, 848 P2d 604 (1993) (a parent's share of the profits of a closely held corporation constitutes income, for child support purposes, even where the parent is a minority owner and has no control over distributions; if the profits are not actually available, the parent can use that fact to rebut the presumptive child support amount).

Thus, gross income, as defined by *former* OAR 137-050-0340, includes "income from any source," regardless of how the income is used and how available it is. The use and availability of the income is relevant only to whether the parent's presumptive child support obligation has been rebutted.

Relying on *Thanhouser and Thanhouser,* 198 Or App 472, 108 P3d 667, *rev den,* 339 Or 407 (2005), father argues that Oregon courts have considered the use of money received by a parent when determining whether to include the money in gross income under *former* OAR 137-050-0340. In *Thanhouser,* the trial court ordered the mother to pay

---

[8] In *Halpert,* we interpreted the definition of "gross income" in *former* OAR 137-050-0340(1) (5/1/96), the predecessor to the version of the subsection at issue in this case. The two are the same except for the addition to the latter version of the phrase "alimony or separate maintenance received."

child support based on a gross income calculation that included $1,000 that the court found that the mother "would earn if she converted some of her existing assets into assets that would generate more income." *Id.* at 477-78. We reversed, holding that it was error to attribute that income to the mother, at least in the absence of a plan on her part "to alter the nature or form of her assets." *Id.* at 479 n 5. Father argues that *Thanhouser* establishes that "whether [an] asset is or produces gross income" depends on "the parent's actual use of the asset." Father reads too much into *Thanhouser.* That case establishes only that a court cannot require a parent to convert an asset in order to increase his or her income when the parent has no plans to do so. It relates to income that *could be received*, not to income that—like the inheritance in this case—*has been received.*

Here, father received a cash inheritance of $75,000 and, contrary to his argument in the trial court and on appeal, the trial court properly included the inheritance when calculating father's gross income to determine his presumptive child support obligation.[9] Accordingly, we reject father's first assignment of error.

In his second assignment of error, father argues that the trial court erred by averaging his income from 2004 to 2007 to determine his gross income. When determining a parent's gross income for child support purposes, a trial court must inquire into the parent's present income. *See, e.g., Waterman and Waterman,* 158 Or App 267, 272, 974 P2d 256 (1999) ("[T]he evidence that [the] husband worked more overtime *in the past* for a different employer is not germane to the calculation of his present gross income under the rules, in the absence of extenuating circumstances." (Emphasis in original.)). However, the court can consider past income if there is fluctuation or other reason to be concerned that the most recent year's information alone will not be accurate. *See, e.g.,*

---

[9] As in *Halpert*, any concerns that father had regarding whether the presumptive amount was inappropriate or unfair needed to be raised and proved in rebuttal of that amount, which father did not do. *See former* OAR 137-050-0333(1). Father's only argument regarding the inheritance in the trial court and on appeal has been that the trial court erred by including the inheritance in his gross income when calculating his presumptive child support amount. He has not argued (much less proved) that he rebutted that presumptive amount.

*Gudmondson and Gudmondson*, 145 Or App 135, 141, 929 P2d 319 (1996) (finding a three-year historical average of the husband's earnings appropriate where the husband's earnings varied from month to month and his testimony about an anticipated drop in income was not entirely credible or fully developed).

Here, father's business and rental income both vary from year to year, so averaging is appropriate. Father argues that using the average of several years artificially inflated his income because his income was declining. The trial court relied on father's tax returns from 2004 to 2007, finding his income to be $41,968 in 2004; $41,506 in 2005; $55,204 in 2006; and $40,776 in 2007.[10] Father does not argue that any of those figures is incorrect, and those figures do not show a downward trend sufficient, in either degree or duration, to invalidate the use of father's average income to calculate his gross income.

Father argues that other evidence—specifically, profit and loss statements comparing January and February 2008 to the same months in 2007, and his own testimony that he has reduced his expenditures—show that his income has declined. However, that evidence is not as comprehensive or reliable as father's tax returns, and, therefore, the trial court did not err in averaging father's income, as reported on his last four tax returns, to calculate his gross income.

Affirmed.

---

[10] We note that father left blank the section of his Uniform Support Affidavit listing the components of self-employment income, which resulted in limited evidence for the trial court to consider. The self-employment income section of the Uniform Support Affidavit lists "gross receipts," "expense reimbursements," "rental income," and "royalty income," then subtracts "ordinary and necessary expenses," and adds "monthly portion of accelerated component of any depreciation allowance or investment tax credits." This approximates the method of calculating self-employment income set out in *former* OAR 137-050-0350 (10/1/07).