423

Submitted June 5, reversed and remanded for a redetermination of father's child support obligation, otherwise affirmed October 21, 2015

In the Matter of the Marriage of

Maegen Kathleen ADAMS,
nka Maegen Kathleen Peterson,
*Petitioner-Respondent,*

*and*

Christopher George ADAMS,
*Respondent-Appellant.*

Multnomah County Circuit Court
091272933; A156714

360 P3d 742

Christopher George Adams filed the brief *pro se.*

No appearance for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

DUNCAN, P. J.

### DUNCAN, P. J.

In this domestic relations case, father appeals the trial court's supplemental judgment, which, among other things, increased his monthly child support obligation.[1] For the reasons explained below, we conclude that the trial court committed reversible error by failing to follow the prescribed methodology when determining father's income for the purpose of calculating his child support obligation. Accordingly, we reverse and remand for a redetermination of father's child support obligation, and we otherwise affirm.

Mother and father divorced in 2010. They have two children. The original dissolution judgment awarded mother custody of the children and required father to pay $805 in monthly child support, based on his monthly income of $4,885. At the time, father was employed by the United States Army as an instructor. In January 2013, father was discharged from the Army because his position was eliminated. Father began receiving unemployment benefits, and he looked for, but did not find, new employment.

Father stopped paying child support in July 2013. Thereafter, father filed a motion to modify his child support obligation, as well as his spousal support obligation and parenting time. Mother filed a response and counterclaim, as well as a contempt action based on father's failure to pay child support.

During the hearings on the parties' motions, father—who had remarried and was living with his new wife and their two children—testified regarding his financial situation. Specifically, he testified that he had lost his job with the Army and that, since January 2013, he had received $625 per week in unemployment benefits, but those would expire in January 2014. He further testified that he received approximately $400 per month for service in the National Guard.

Father explained that he had looked for work, but had not found any. He testified that the Army did not have

---

[1] Father raises three assignments of error. We write to address his first assignment, and we reject his remaining two assignments without written discussion.

any openings for his job or rank, and that he had applied for numerous other positions with federal agencies and law enforcement. After being unable to find work, father had decided to open a CrossFit gym. To start his business, he borrowed $25,000. He paid $3,000 to use the name CrossFit; he also leased a space for the gym and paid to have it modified to meet CrossFit standards.

Father testified about his basic personal expenses—for food, rent, utilities, transportation, and family health insurance—which totaled approximately $2,590 ($400 in food, $1,100 in rent, $300 in utilities, a $595 car payment, and $195 for health insurance for himself and the children). Father also testified about his business expenses. His monthly loan payment was $519, and his monthly lease payment was $1,771 per month, for a total of $2,290 per month.

Father testified that he had been able to meet his expenses. When questioned about how he had been able to do so, father explained that he had used his savings, but had nearly depleted them; he reported that he had only $100 in a savings account and $500 in a checking account. As a result, father's new wife was supporting their family with her military disability benefits.

At the close of the hearing, mother argued that the court should set father's income based on his expenses. Mother listed the amounts father had identified for his food, rent, utilities, transportation, and family health insurance, which totaled approximately $2,590, and the expenses for his business's rent and loan, which totaled $2,290, and she argued that the court should add those two amounts together and set father's income at $4,880. The trial court accepted that argument, stating:

> "[Father] did testify that he has substantial costs each month. My math also found them to be $4,880 a month. He said that he meets those obligations each and every month. I'll credit him with that testimony.
>
> "He also testified that his wife basically supports him. So I'm [going to] attribute his monthly income to be $4,880 a month."

Accordingly, in a judgment entered on April 2, 2014, the trial court set father's monthly child support obligation at $1,158, using $4,880 as father's income.

On appeal, father challenges the trial court's determination of his income for the purpose of calculating his child support obligation. Child support calculations are governed by the Oregon Child Support Guidelines, OAR 137-050-0700 to 137-050-0765. Whether a trial court has complied with the guidelines is a question of law, which we review for errors of law. *McMurchie and McMurchie*, 256 Or App 712, 721, 304 P3d 751 (2013).

The child support guidelines prescribe a multi-step process for determining a parent's "guideline support amount." OAR 137-050-0710.[2] The guideline support amount is "presumed just and appropriate, subject to *** rebuttal as provided in OAR 137-050-0760." OAR 137-050-0710(4).

Father contends that the trial court erred at the first step of the process: determining his income. OAR 137-050-0710(1)(a). Income determinations are governed by OAR 137-050-0715. Under that rule, a parent's income can include the parent's actual income and potential income. OAR 137-050-0715(1). "Actual income" is defined by OAR 137-050-0715(2), which provides, "'Actual income' means a parent's gross earnings and income from any source," subject to certain exceptions. As relevant here, a parent's actual income includes the parent's "[e]mployment-related income," such as salaries and wages, and "[i]ncome replacement benefit[s]," such as unemployment insurance benefits. OAR 137-050-0715(2), (4)(a), (4)(d). "Potential income" is defined by OAR 137-050-0715(3), which provides, in part:

> "'Potential income' means the parent's ability to earn based on relevant work history, including hours typically worked by or available to the parent, occupational qualifications, education, physical and mental health, employment potential in light of prevailing job opportunities and earnings levels in the community, and other relevant factors."

---

[2] Following the trial court's judgment in this case, OAR 137-050-0710 was amended on May 22, 2014. However, because none of the subsequent changes are implicated here, we refer to the current version of OAR 137-050-0710 throughout.

"If a parent's actual income is less than the parent's potential income," a court "may impute potential income to the parent." OAR 137-050-0715(6). "If insufficient information about the parent's income history is available to make a determination of actual or potential income, the parent's income is the amount the parent could earn working full-time at the minimum wage in the state in which the parent resides." OAR 137-050-0715(7).

To summarize, when calculating a parent's income under OAR 137-050-0715, a court must first determine the parent's actual income and potential income. Then, the court must compare the parent's actual income to the parent's potential income. If the parent's actual income is less than the parent's potential income, then the court can impute potential income to the parent. Thus, a parent's income under OAR 137-050-0715 must be based on the income that the parent is receiving or could be receiving. It cannot be based on another person's income.

Once a parent's income and corresponding guideline support amount is calculated, the amount can be challenged. As mentioned, OAR 137-050-0710(4) provides that the guideline support amount is "presumed just and appropriate, subject to * * * rebuttal as provided in OAR 137-050-0760." In turn, OAR 137-050-0760 provides that, "[t]he presumption that the guideline support amount * * * is the correct support amount may be rebutted by a finding that sets out the presumed amount, concludes that it is unjust or inappropriate, and sets forth a different amount and a reason it should be ordered." The rule further provides that the criteria that may be the basis for rebuttal include "[t]he financial advantage afforded a parent's household by the income of a spouse or domestic partner." OAR 137-050-0760(9).

Thus, under the rules governing child support, the only amounts that can be included in a parent's income under OAR 137-050-0715 are the parent's own actual and potential income. *See Ainsworth and Ainsworth,* 114 Or App 311, 314-15, 835 P2d 928 (1992) (holding, under prior version of the child support rules, that "[t]he only items that are included in gross income are a parent's own income

and, in some cases, potential income" and that a spouse's income may be considered only under the rule that "allows the rebuttal of the presumed basic support amount when a parent's household has a financial advantage created by the income of a spouse"); *see also Hardiman and Hardiman,* 133 Or App 112, 113, 889 P2d 1354 (1995) (holding, under the then-current child support rules, that the trial court erred in considering the income of each parent's new partner when determining the parents' presumptive child support obligations; when calculating gross income under the rules, "the only items that are included are the parents' income and, in some cases, their potential income").

In this case, the trial court erred in determining father's child support amount because, when it calculated father's income at the first step of determining the guideline support amount, it did not rely on father's income alone; instead, it also relied on father's wife's income. The undisputed evidence was that father had lost his job with the Army, had been unemployed and unable to find work, and was starting a business. At the time the trial court entered its judgment, father's only actual income was the $400 he earned from the National Guard.[3] And, the trial court did not base father's income on father's potential income; it did not make any findings that father had the opportunity to earn $4,880 per month. *See Andersen and Andersen,* 258 Or App 568, 584, 310 P3d 1171 (2013) (holding that a finding that a parent's earning capacity exceeds his or her actual income must be supported by "nonspeculative evidence of *present* earning capacity," "mere reliance on attenuated earning history is legally insufficient" (emphasis in original)).

Instead, as described above, the trial court based father's income on the expenses that, at the time the trial court entered its judgment, father paid for using his wife's military disability income. That was error. Father's wife's income cannot be factored into a calculation of father's guideline support amount. In some circumstances, a spouse's income can be used to rebut the presumption that the

---

[3] As mentioned above, father testified that his unemployment benefits terminated in January 2014, which was before the conclusion of the hearings in this case and before the trial court issued its supplemental judgment.

guideline support amount is just and appropriate, but only if the court first determines the guideline support amount and concludes that that amount is unjust and inappropriate, which is not what the court did here.[4]

Reversed and remanded for a redetermination of father's child support obligation; otherwise affirmed.

---

[4] After the hearing, mother prepared a judgment, to which father objected. At the hearing on father's objections, father asked the trial court about its decision to set his income at $4,880. The trial court explained that it had set father's income at that amount because father had taken out a loan to start his business, but could have used the loan "to pay for travel and other things related to the care of the children." The trial court further explained that it had also based the amount on the fact that father "had access to other resources, mainly his current wife." To the extent that, when determining father's income under OAR 137-050-0710, the trial court relied on father's ability to borrow, the court erred because— like the income of a spouse or domestic partner—a parent's ability to borrow is not to be factored into a determination of the parent's income, although it can be considered when determining whether the presumption that the guideline support amount is just and appropriate has been rebutted. OAR 137-050-0760(4).