Argued and submitted April 19, 2016; on appeal, awards of spousal
maintenance support and child support reversed and remanded, otherwise
affirmed; affirmed on cross-appeal June 1, 2017

In the Matter of the Marriage of

Cynthia R. SKINNER,
nka Cynthia R. Davenport,
*Petitioner-Appellant
Cross-Respondent,*
*and*

Andrew J. SKINNER,
*Respondent-Respondent
Cross-Appellant.*

Linn County Circuit Court
13DR02511; A157833

398 P3d 419

Edward L. Daniels argued the cause for appellant-cross-
respondent. With him on the briefs was Law Office of Daniels
and Ivers.

Daniel S. Margolin argued the cause for respondent-cross-appellant. With him on the briefs was Stephens & Margolin, LLP.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**TOOKEY, J.**

Wife appeals a general judgment of dissolution, raising two assignments of error. In her first assignment of error, wife argues that the trial court erred in its award of spousal maintenance support; wife raises two arguments concerning the amount and timing of the award. In her second assignment of error, wife argues that the trial court erred in setting child support based upon her imputed income. Husband cross-appeals, raising two assignments of error.[1] We write only to address wife's contentions on appeal, and reject without discussion husband's assignments of error on cross-appeal. For the reasons that follow, we reverse and remand the awards of spousal maintenance support and child support, and otherwise affirm on appeal and cross-appeal.

On appeal, wife does not seek *de novo* review and this is not an exceptional case warranting such review. ORS 19.415(3)(b); ORAP 5.40(8)(c). "Accordingly, we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record." *Andersen and Andersen*, 258 Or App 568, 570, 310 P3d 1171 (2013) (internal quotation marks omitted). We recite the facts consistently with that standard of review.

The parties were married for over 20 years. At the time of dissolution, the parties' only child was 19 years old and was living with husband and attending community college.

Husband has a high school education and had taken some classes at a community college. At the time of trial, husband worked for DNV/KEMA; husband estimated that his base salary was approximately $70,400 per year, averaging a gross monthly income of $6,200. In addition to husband's base salary, he enjoys a benefits package of an additional $24,000; husband's entire "salary package" is approximately $94,400.

---

[1] On cross-appeal, in his first assignment of error, husband argues that the trial court erred in awarding wife indefinite spousal maintenance support. In his second assignment of error, husband argues that the trial court improperly calculated the distribution of the parties' assets by miscalculating the amount of husband's withdrawal from his retirement account.

Wife has a high school education and was employed during most of the marriage at various retail stores. Wife's most recent long-term employment was as a manager for Save-A-Lot; in that position, wife earned approximately $49,000 per year, working seven days per week for about 75-85 hours per week. Additionally, that position required wife to commute from the family home in Albany to the store's location in Springfield, which added an additional two hours to her workday.

Husband and wife agreed that wife should find a job that would allow wife to work fewer hours. Wife was unable to find work at a comparable income because her experience made her too qualified for sales or retail work and her education was inadequate for management positions that might have approached her income at Save-A-Lot. As a result, in order to qualify for management positions and earn a higher salary, wife decided to return to school. The parties disputed whether they had agreed that wife would pursue higher education; nonetheless, the trial court found that husband was aware of—and at least tacitly agreed to—wife returning to school.

At the time of the dissolution trial in April 2014, wife was unemployed and was a full-time student at community college, with an ultimate goal of obtaining a master's degree in either counseling or social work. Wife expected that she would graduate with her bachelor's degree after the winter term of 2017 and with her master's degree after the winter term of 2018. Wife requested that the trial court award her $750 per month in transitional spousal support for a period of five years and $750 per month in spousal maintenance support for an indefinite period of time. The trial court ultimately awarded wife $750 per month in transitional spousal support for five years, and $500 per month in spousal maintenance support to commence five years after dissolution, and to run for an indefinite period of time.[2] The trial court ordered husband to pay $603 per month in child support,

---

[2] We note that wife does not challenge the trial court's award of transitional support. A trial court may award transitional support "as needed for a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein." ORS 107.105(1)(d)(A).

and the court ordered wife to pay $451 per month in child support.

On appeal, in her first assignment of error, wife contends that the trial court erred in its award of spousal maintenance support. First, wife argues that the trial court's award of $500 per month in spousal "maintenance support is too low and falls outside of a just and equitable choice of legally correct alternatives." Second, wife argues that the award of spousal maintenance support should have commenced upon entry of the judgment of dissolution and the court erred by commencing that support five years after dissolution. In other words, as we understand wife's argument, the trial court erred in failing to award spousal maintenance support for the first five years following dissolution. In response, husband argues that the trial court awarded wife "a reasonable and legally proper amount of spousal support," and that "it is less important to determine whether the two types of spousal support should run simultaneously, and more important to review whether the total award of support is appropriate for each time period."

> "We review the trial court's ultimate determination about a just and equitable amount of support for abuse of discretion. We will uphold a support award if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is just and equitable represents a choice among legally correct alternatives."

*Andersen*, 258 Or App at 570 (internal quotation marks and citations omitted).

A trial court, in its judgment of dissolution, may order "[s]pousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period." ORS 107.105(1)(d)(C). Spousal maintenance support "allows one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." *Abrams and Abrams*, 243 Or App 203, 207, 259 P3d 92, *rev den*, 350 Or 716 (2011). In long-term marriages, "the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage[.]" *Id.*

"In determining the proper amount and duration of an award of spousal maintenance support, the factors to be considered by the court include the duration of the marriage; the age of the parties; the physical, mental, and emotional health of the parties; the standard of living established during the marriage; the parties' relative income and earning capacity; a party's training, employment skills, and work experience; the financial needs and resources of each party; the tax consequences to each party; a party's custodial and child support responsibilities; and any other factors that the court deems just and equitable."

*Mitchell and Mitchell*, 271 Or App 800, 811, 353 P3d 28 (2015) (citing ORS 107.105(1)(d)(C)(i) - (xi)).

In a letter opinion to the parties, the court stated that the case presented "a somewhat unique factual situation where Wife, with at least the tacit support of Husband, leaves a job that has her overworked, to be retrained and then cannot obtain the same paying job because of too much experience for a clerk, while too little educat[ion] for a management position." In the trial court's findings regarding the parties' financial needs and resources, the court stated:

"Wife currently lives with her parents and plans to move to an apartment within a short period of time. This move, reasonable at her age and stage of life, will increase her financial needs. Her resources, assuming that she remains in school, will not be increased to cover the additional costs. Her anticipated expenses are expected to total $2,100 per month in fixed costs, with consumer financial obligations of an additional $450 per month and child support. Her educational costs and child support *** break out to an additional monthly cost of $1,282 per month.

"There is no reason to find that Husband's financial needs or resources will change post marriage. *** Husband stands to have approximately $1,500 left at the end of the month [after expenses], not considering the total 'salary package' that he enjoys from his employer."

As to the parties' relative income and earning capacity, the court found that, although husband was at the top of his earning capacity,

"Wife is currently well below her earning capacity. Still, when Wife has obtained her degree(s), her earning capacity

is 60% of Husband's earning capacity, without considering the benefit package that Husband enjoys or any potential benefit that Wife may have when she is fully educated. Based upon the evidence, there is no reason to not conclude that this relative income disparity should not continue into the future."

As to factors the trial court deemed "just and equitable," the court stated:

"During the marriage, Wife worked 75-80 hours per week in her latest, and most lucrative employment. She earned a salary of $49,000 per year with, literally, no family life outside of her employment. Certainly, Husband worked a full time job as well, but there is nothing in the record suggesting that Husband made the type of sacrifice that Wife made for both parties to provide for the family. At her separation from Save-A-Lot, Wife's income was approximately 68% of Husband's income.

"* * * Wife has shown true investment in her education to the point at which it appears that her experience at work verses education levels would not make similar salary expectations probable. The evidence is that in her chosen field of pursuing a Master's Degree, she can expect a salary of $40,000 per year [and that] is a reasonable expectation. She shouldn't be penalized for forgoing a job requiring 80 hours a week for a profession that she has chosen in this case. Still, assuming a salary of $40,000, she can expect a salary that is approximately 60% of that which Husband looks to enjoy."

In determining spousal support, the court stated that it "has taken into consideration Wife's anticipated income after graduation." The court then awarded wife spousal maintenance support in the amount of $500 per month for an indefinite period, "to commence after the termination of the transitional support," which was set to terminate five years following entry of the general judgment of dissolution. In other words, the trial court did not award spousal maintenance support for the first five years, but awarded $500 in monthly spousal maintenance support to commence five years after dissolution.

We agree with wife that the trial court misapplied the factors specified in ORS 107.105(1)(d)(C). Contrary to

the trial court's express and implied findings that at the time of dissolution wife was a full-time student with little to no financial resources, and that it would take at least four years for wife to obtain her master's degree and earn a reasonable income, the trial court did not award wife spousal maintenance support for the first five years following dissolution. As noted, the primary purpose of an award of spousal maintenance support is to provide a standard of living to both spouses that is roughly comparable to the one that each party enjoyed during the marriage. Here, the trial court's denial of a spousal maintenance award for the first five years following dissolution results in wife's standard of living not being roughly comparable to the standard of living that each party enjoyed during the marriage. Indeed, the court found that during the time that wife would be obtaining her degrees, her only financial resources would consist of $750 in transitional support and her student loans. Nevertheless, contrary to that finding, the court did not award any spousal maintenance support for that critical period during which wife was in school. *See Snyder and Snyder*, 102 Or App 41, 44-45, 792 P2d 478 (1990) ("[I]n marriages of long duration, where the parties have disparate earning capacities, permanent spousal support is necessary to avoid an overly disproportionate impact on the disadvantaged spouse.").

Similarly, in awarding spousal maintenance support, the trial court appears to have incorrectly imputed wife's estimated future salary—a salary that she expects to make after obtaining her master's degree—in calculating the amount of the spousal maintenance support award. As noted, in "determining what is just and proper," the trial court stated that it had "taken into consideration Wife's anticipated income after graduation." In so doing, the trial court did not base its award on wife's circumstances existing at the time of dissolution. *See Cullen and Cullen*, 223 Or App 183, 190, 194 P3d 866 (2008) ("A spousal support order should be based on circumstances existing at the time of dissolution[.]"); *McLauchlan and McLauchlan*, 227 Or App 476, 491, 206 P3d 662, *rev den*, 346 Or 363 (2009) ("[A]lthough a spousal support order must take into account the lifestyle enjoyed by the parties during the marriage, it is also based on circumstances existing at the time of

dissolution."). Moreover, even when considering wife's future estimated salary, the trial court found that wife's earning capacity would be 60 percent of husband's earning capacity, without taking into account husband's additional benefit package, noted above. Despite the disparity in the parties' incomes and earning capacities, the trial court concluded that a monthly spousal maintenance award of $500 was just and equitable.

For all of the reasons set forth above, we conclude that the trial court misapplied the factors specified in ORS 107.105(1)(d)(C). As a result, the spousal maintenance support award does not represent a choice among legally correct alternatives. Accordingly, we reverse and remand the trial court's spousal maintenance support award.

In her second assignment of error, wife contends that the trial court erred in calculating child support based on wife's imputed income of $40,000 per year. Wife argues that the court improperly used her future potential income to set child support, rather than using minimum wage. In response, husband argues that the trial court properly imputed her income because "wife was unemployed but had the skills and ability to be employed at the time of trial."

We review whether the trial court correctly calculated the parties' incomes under the child support guidelines for legal error. *Morgan and Morgan*, 269 Or App 156, 167, 344 P3d 81, *rev den*, 357 Or 595 (2015).

For purposes of calculating child support, a parent's income can include the parent's actual income and potential income. OAR 137-050-0715(1). "'Actual income' means a parent's gross earnings and income from any source[.]" OAR 137-050-0715(2). On the other hand, potential income "means the parent's ability to earn based on relevant work history, including hours typically worked by or available to the parent, occupational qualifications, education, physical and mental health, employment potential in light of prevailing job opportunities and earning levels in the community, and any other relevant factors." OAR 137-050-0715(3). If a parent's actual income is less than the parent's potential income, the court may impute potential income to the

parent. OAR 137-050-0715(6). "Thus, a parent's income under OAR 137-050-0715 must be based on the income that the parent is receiving or could be receiving." *Adams and Adams*, 274 Or App 423, 427, 360 P3d 742 (2015). However, a finding that a potential income exceeds his or her actual income must be supported by "nonspeculative" evidence "and relate to * * * present earning capacity." *Andersen*, 258 Or App at 585-86; *Leif and Leif*, 246 Or App 511, 519, 266 P3d 165 (2011) ("When determining a parent's gross income for child support purposes, a trial court must inquire into the parent's present income.").

Here, the trial court incorrectly imputed income to wife in setting wife's child support obligation. In its letter opinion, the trial court stated:

"Wife's only current income is [transitional] spousal support [$750] and student loans.

"* * * * *

"* * * The potential income for Wife in this case, and the actual salary level that she expects [to receive after graduating with her master's degree], is $40,000, or $3,333 per month."

As a result, the trial court erred in determining wife's child support amount because, when calculating wife's income, the court did not find that, at the time of dissolution, wife had the present ability to earn $3,333 per month. The trial court's conclusion that wife's potential income for child support purposes was $40,000 was contrary to the court's factual findings that wife was a full-time student who was unable to find work "primarily because her experience made her too qualified for sales/retail work and her education was inadequate for management positions," and whose only financial resources were $750 per month in transitional spousal support and student loans. By using wife's speculative future income—an income that wife estimated she could make after obtaining her master's degree—that did not relate to wife's present earning capacity at the time of dissolution, the trial court erred in setting wife's child support obligation. *See Bouris and Bouris*, 276 Or App 637, 639, 369 P3d 1186 (2016) ("In light of wife's full-time status as a

student, we conclude that the court's imputation of full-time income is not supported by the evidence in the record.").

On appeal, awards of spousal maintenance support and child support reversed and remanded; otherwise affirmed. Affirmed on cross-appeal.